FRUGÉ, Judge.
This is a suit for workmen’s compensation benefits brought by George White against American Employers’ Insurance-Company, the insurer of his former employer, the City of Jennings. The trial judge awarded plaintiff compensation for total temporary disability at the rate of $35.00 a week for a period of 300 weeks, with legal interest on the unpaid portion of each installment from its respective due date until paid, subject to a credit for the compensation heretofore paid to plaintiff by defendant. The judgment allowed for expert witness fees the sum of $50.00 each for the four physicians who testified. The-judgment further ordered defendant to pay-a penalty of twelve percent on the difference between the weekly rate of $35.00 and' the weekly rate actually paid to plaintiff by defendant, which was then past due more-than 60 days, and on all such amounts which may become more than 60 days overdue in-the future. Penalty attorney’s fees were fixed at the sum of $500.00. From this-judgment plaintiff has taken this appeal and defendant has answered.
The substantial issues in this case are: (1) is plaintiff’s injury total permanent disability or total temporary disability; (2)-should the twelve percent penalties and penal attorney fee be allowed; and (3) is $50.-00 a reasonable expert witness fee for a-, medical specialist
Plaintiff White was employed as a water department laborer by the City of Jennings, at the time of the accident. The defendant, American Employers’ Insurance Company, was the workmen’s compensation carrier for the City of Jennings at the time the-accident occurred. White’s principal duty as a laborer was to assist in the construe *544 tion, maintenance and repair of the City’s water system.
Plaintiff testified that on or about March 22, 1964, while he was rodding1 (cleaning) a sewer line, his right glove hand was caught in the revolving sewer rod. He was immediately taken to the hospital by a fellow worker and was treated by Dr. Bear-den. Dr. Bearden, on examining plaintiff’s right hand, found he had almost amputated his thumb at the mid-portion and he had also completely amputated his ring finger tip. These lacerations extended quite deeply and also involved some dislocation of the joint of the middle and ring fingers. Subsequently the blood supply was insufficient to maintain vitality in the thumb, and the thumb, because of the lack of blood, became gangrenous and a portion of it was amputated.
Plaintiff was discharged from the hospital several days after the amputation. He has continued visiting physicians and receiving treatment for pain and tenderness of his hand and has been placed upon physical exercises to try to maintain the mobility of the hand.
Plaintiff testified that since the accident he has not beeen able to do manual work of the type he did prior to the accident.
Under the advice of the treating physicians that he return to light work notwithstanding the pain, plaintiff sought re-employment with the City of Jennings. He was denied this re-employment for the reason he had filed suit.
Plaintiff received workmen’s compensation at the rate of $30.00 per week from the ■end of March through August. On August 25, 1964, suit was filed against defendant, ■claiming compensation of $35.00 per week, together with penalties and attorney’s fees, based upon the allegation that the defendant’s failure and refusal to pay $35.00 per week was arbitrary, capricious and without probable cause. Beginning on or about October 5, 1964, the defendant insurer reduced compensation payments to plaintif to $10.00 per week.
The first issue for decision is the extent of plaintiff’s disability. The record contains the deposition of Dr. George P. Schneider, an orthopedic surgeon, who testified on behalf of plaintiff. Dr. Schneider examined plaintiff on November 5, 1964. He found that plaintiff had multiple injuries to his right hand resulting in the amputation of about 1J4 inches of the right thumb and loss of the distal third of the distal phalanx of the right ring finger. At the time of the examination plaintiff was unable to straighten out the distal inter-phalangeal joint of the ring finger, and this joint was almost completely fixed in a position of 130 degrees. He felt that if plaintiff went back to work it would be beneficial physical therapy. He stated that working might be a measure which possibly could improve the function of the hand if plaintiff could tolerate it. He further stated that plaintiff was unable to do the work he was previously doing, but that it would be better for him to do some kind of physical work than to allow his hand to remain idle.
The record also contains the deposition of Dr. Charles V. Hatchette, an orthopedic surgeon. Plaintiff had been referred to him by Dr. Harlie Bearden of Jennings, Louisiana, who had treated plaintif f at the time of the accident. He examined plaintiff on September 21, 1964. Dr. Hatchette felt that plaintiff had received all the medical care that was indicated; that plaintiff would probably have residual weakness which would improve in time; that he was disabled to the extent of about twenty-five percent of the right hand. He felt, however, that plaintiff was able to return to work, and that the limitation of motion in the fingers would continue to improve. On cross examination, however, the doctor stated that if plaintiff was subjected to a pre-employment physical and was competing with a man of similar age and similar situation without such a disability, the man without the disability would in all probability receive preference over the plaintiff in the general labor market
*545 The record also contains a third deposition of Dr. Byron M. Unkauf, an orthopedic surgeon from New' Orleans, Louisiana. Dr. Unkauf testified in behalf of plaintiff. He examined the plaintiff on December 28, 1964. He found that there were one and a half phalanges absent from the thumb and that he had a range of movement of the carpal metacarpal joint of 145 to 45 degrees. It was noted that plaintiff was unable to touch the stump of his thumb to the fifth or the fourth fingers, and when he does with the second and third fingers, he has considerable weakness in so doing due to the leverage. He further stated that plaintiff had a permanent disability of the right hand of fifty percent, based on the fact that more than one finger or digit had been involved, and was doubtful that, with plaintiff’s level of education he would be able to compete in the open market as a laborer very successfully. He further stated that the work that he was capable of doing was limited. On cross examination Dr. Unkauf stated:
“I am sure he would have difficulty in, say, unloading large things from a truck, and that would be common labor. I think he would have difficulty in maintaining a shovel because of his lack of ability to hold the shovel properly, and as I said before, he would have difficulty in picking up, for instance, sacks of cement and things like that, so I think you could safely say that he would have difficulty in doing just about anything if he was depending on using that hand.”
The record also contains the testimony of Dr. Harlie Bearden, the treating physician. Dr. Bearden testified for the defendant. His opinion was that plaintiff was suffering residual disability of his right hand of approximately thirty percent. It was his opinion that plaintiff could still do manual labor that he was accustomed to doing before the accident if he was given a sufficient length of time to regain strength in his hand and if his employer was sympathetic and understanding of his disability. On cross examination Dr. Bear-den stated that he did not mean that this man could compete equally in the open market as a laborer, but that he believed that his former employer, the City of Jennings, would rehire him, allowing at least six months for adjustment. When Dr. Bearden was informed that the plaintiff’s former employer had refused to rehire him, the doctor stated:
“It is my position that the plaintiff would have an extreme amount of difficulty in getting a job somewhere else because of his age and his thumb.”
When all the medical testimony is taken as a whole, we are of the opinion that plaintiff was disabled at the time of the trial from performing the duties required of a common laborer due to the weakness and pain in his right hand. The evidence is indefinite as to when plaintiff will recover from this condition; however, the medical experts said this condition of weakness and pain could disappear with use.
Therefore, plaintiff is entitled to the maximum compensation for an indeterminate period, not to exceed 400 weeks.
The second issue for decision is whether the insurer was arbitrary, capricious or without probable cause in not paying the correct amount of weekly compensation. '
Defendant has raised the issue on appeal that the judgment of the lower court awarding statutory penalties of twelve percent and attorney’s fees of $500.00 be disallowed as being contrary to the law and the evidence.
LSA-R.S. 22:658 allows such penalties when the failure to pay is found to be arbitrary, capricious, or without probable cause.
Under the facts in evidence in this case, we are of the opinion that there were serious disputes as to whether or not claimant was entitled to compensation for the specific injury or for total and permanent disability. As for the payment of the incorrect compensation rate ($30.00 instead of $35.00) we *546 find that under the evidence on the basis of information reasonably available to the insurer, there was a good faith dispute as to the daily rate of earnings of the plaintiff which was not resolved until trial. Insofar as the insurer reducing compensation payments from $30.00 to $10.00, this was done based on the medical report of Dr. Bearden indicating that plaintiff was able to return to work with a thirty percent disability of the right hand. See LSA-R.S. 23:1221 for schedule of payments for temporary, permanent or partial disability.
Based on the record, we find the lower court erred in finding that the insurer’s acts were arbitrary, capricious or without probable cause and so awarding statutory penalties and penalty attorney’s fees.
The third and last issue is whether the $50.00 each awarded Drs. Unkauf, Schneider, Platchette and Bearden are reasonable expert fees for their services.
Dr. Unkauf saw the plaintiff only once to assess the man’s disability and to give suggestions to improve his condition. His deposition was taken at his office in New Orleans on January 15, 1965. Dr. Schneider examined plaintiff on November 5, 1964, for evaluation of his injury. A deposition was taken of his findings and opinion on January 12, 1965, at 5:00 P.M. in his office at Lake Charles. Counsel for defendant failed to appear at this time so the deposition was continued to 5:30 P.M. January 19, 1965. Due to defendant’s counsel’s failure to appear at the first deposition, said counsel paid Dr. Schneider $75.00 for the continuation. Dr. Hatchette examined plaintiff for the defendant on September 21, 1964, in Lake Charles, Louisiana. His deposition was taken on January 19, 1965, at his office in Lake Charles, at 4:00 P.M. Dr. Bearden, the treating physician, was called to the trial by the defendant.
The trial judge awarded $50.00 to each of the physicians, stating that when an expert physician in a specialty testifies in his office at his convenience, $50.00 is a reasonable fee. The lower court has the right to fix the fees of experts and to tax the same as costs. That amount is largely in the discretion of tire lower court, and it is properly so, for the lower court is in the best position to judge what is a reasonable expert’s fee. Unless the lower court greatly abuses this discretion, its finding will not be disturbed. Richardson v. Southern Kraft Corporation, La.App. 2 Cir., 5 So.2d 24.
Por the foregoing reasons, the judgment of the trial court is amended so as to increase the workmen’s compensation from $35.00 for 300 weeks to $35.00 for a period not to exceed 400 weeks. The judgment of the lower court is further amended to disallow the twelve percent statutory penalty and attorney’s fees. As thus amended, the trial court’s judgment is affirmed in all other respects.
Amended and affirmed.