189 So.2d 706 (1966)
PITTMAN AND MATHENY
v.
T. H. DAVIDGE, Jr., and David D. Davidge.
No. 6730.
Court of Appeal of Louisiana, First Circuit.
July 8, 1966.
Rehearing Denied September 19, 1966.
Writs Refused November 7, 1966.
*708 Joseph H. Simpson, of Schilling & Simpson, Amite, Pittman & Matheny, Hammond, for appellants.
Richard E. Burton, of Burton, Roberts & Ward, Baton Rouge, for appellees.
Before LOTTINGER, LANDRY, REID, BAILES and LEAR, JJ.
LANDRY, Judge.
This is a suit for attorney's fees claimed by plaintiff law firm against two clients for legal services performed at the request of the clients from October 7, 1959, to June 26, 1962, incident to defendants' acquisition of ownership of approximately 640 acres of land situated in Calcasieu Parish. After trial on the merits, the lower court awarded plaintiffs judgment in the sum of $3,580.56 (the sum of $80.56 being admittedly due for expenses incurred by plaintiffs). From said decree plaintiffs have appealed praying that the award be increased to the sum of $5,000.00 for legal services rendered. Defendants have answered the appeal praying that the amount of the fee be reduced to $1,500.00.
Inasmuch as both plaintiffs and defendants have appealed, for the sake of clarity the terms "appellants" and "appellees" shall hereinafter be understood to mean plaintiffs and defendants, respectively.
It is conceded that prior to rendition of the services for which remuneration is sought herein, plaintiff firm examined the title to the subject property from an abstract furnished by the clients and wrote a title opinion detailing to defendants the names of and the undivided interest owned by each of the numerous co-owners of the property. For this initial preliminary work appellants admit payment in full. The present controversy arose because the parties, having long enjoyed the relationship of attorney and client, neglected to agree in advance upon a fee for the services herein sued upon. At the conclusion of the representation, appellants billed appellees for the sum of $5,000.00 in addition to the expense item previously noted. A dispute immediately ensued over the amount of the fee and appellants offered to submit *709 the matter for arbitration. Defendants declined to either pay or arbitrate whereupon plaintiffs instituted suit for $5,000.00 plus expenses, together with legal interest from June 26, 1962, (the date on which plaintiffs billed defendants), until paid, and all costs.
Appellants urge that the learned trial court erred in (1) declining to award the sum of $5,000.00 claimed despite finding the value of the services rendered exceeded that amount; (2) allowing interest from date of judicial demand (February 17, 1964) instead of from June 25, 1962; and (3) refusing to fix the fees of certain expert witnesses in the sum of $250.00 each.
In answering the appeal appellees maintain that in addition to the fee being reduced to the sum of $1,500.00 costs should be equally divided between the litigants and the fees of the expert witnesses should be reduced to $50.00 apiece.
The record discloses that when the work in question was approximately two-thirds complete there was a discussion between Mr. Pittman, the attorney handling the matter, and one of the defendants who inquired what the fee would be. There is, of course, some disagreement as to what was said on this occasion. Appellants concede the client was advised the fee would be substantial, at least in the sum of Three Thousand Dollars. It is likewise acknowledged that the client expressed considerable dissatisfaction at the amount quoted. Nevertheless the attorney persuaded the client to permit him to handle the matter to completion and if the amount billed thereafter proved unsatisfactory plaintiff attorney stated he would make an effort to satisfy the client.
Defendant, T. H. Davidge, testified that on the occasion when the fee was first discussed, Mr. Pittman informed him the fee would be $3,000.00 to $3,500.00, whereupon Davidge replied "* * * it is going to be ice on the ground in July before you get it * * *", and a rather heated argument followed, which ended when Mr. Pittman stated "* * * let me complete this case and I will send you a bill and if it isn't right, you say so and I will make it right." There can be little doubt but that as a result of the discussion, appellees were left with the impression the fee would not exceed $3,500.00.
It is settled law that where there is no express contract fixing his fee, an attorney-at-law is entitled to remuneration for services rendered on quantum meruit. Russell v. Simmons & Simmons, 179 La. 937, 155 So. 441; Heisler v. Trubey, La. App., 140 So.2d 723. In determining the value of legal services rendered, the court must take into consideration the responsibility incurred, the importance and value of the subject matter, the monetary amount involved, the extent and character of the work performed, and the legal knowledge and attainments and skill of counsel. Peiser v. Grand Isle, Inc., 224 La. 299, 69 So.2d 51; Henriques v. Vaccaro, 218 La. 1020, 51 So.2d 611.
In the instant case, appellants rendered services in connection with four separate tracts comprising 160 acres each. Appellees desired to acquire ownership of the properties and furnished appellants an abstract of title for examination and rendition of a title opinion. Plaintiffs were paid for all services rendered in connection with the title opinion as well as purchases of certain fractional interests in the tracts acquired on or before October 5, 1959. As previously stated the present suit is for professional services rendered subsequent to October 5, 1959.
It appears the title chain to the property in question was complicated. The four tracts belonged to members of the Weckerling family, pursuant to separate patents issued by the state for each parcel in or about the year 1875. Each tract, therefore, had a separate chain of title.
Mr. Pittman initially prepared a history of the Weckerling family because, from *710 the time of its separation from the sovereign, the property remained in the Weckerling family although the records show transfers by various members of the family to other members covering fractional interests in the tracts. By transfer and inheritance, over the years, ownership became invested in numerous parties, some of whom lived elsewhere than in Calcasieu Parish. Upon the death of certain co-owners, their succesions were opened in the parishes of their respective domiciles, in some instances the Parish of Calcasieu and in others the Parish of Orleans. In still other instances there were no succession proceedings had with respect to decedents owning fractional interests in the properties.
Based upon the family history furnished by plaintiff, defendants acquired a substantial interest in the tracts and engaged plaintiffs to file a partition suit coupled with an action for declaratory judgment to formally fix appellee's interest in the land. An important aspect of the suit consisted in submitting proof of heirship in twenty-seven successions and establishing the interests of thirty-one surviving heirs, some of whom had granted mineral leases covering their fractional interests. Among the numerous mineral lessors, some admittedly had no remaining interest in the property. Other parties who claimed interests in the land and granted mineral leases thereon were alleged in the partition suit to be without interest therein because of eight certain deeds executed between the years 1910 and 1915, the validity of which documents were questioned and made an issue.
In the course of handling the matter Mr. Pittman made three trips from Hammond to Lake Charles, Louisiana, at defendants' expense to confer with various attorneys appointed by the court to represent absent defendants in the partition suit. To prepare the petition necessary to institute the partition suit, Mr. Pittman was required to make a thorough restudy of the 904 page abstract as well as other documents pertinent to titles to the several tracts. Ultimately he confected a petition containing 118 articles and a seven paragraph prayer.
During the pendency of the suit Mr. Pittman assisted defendants in negotiations for the acquisition of additional interests and also acquired for defendants certain fractional interests defendants themselves could not obtain. In addition Mr. Pittman made a trip to New Orleans to discuss with attorneys of Humble Oil Company the removal and cancellation of an oil, gas and mineral lease on a portion of the property. His efforts in this regard convinced the lessee its lease was invalid and culminated in the voluntary cancellation of the mineral servitude held by Humble.
Incident to the partition suit Mr. Pittman prepared a ten-page memorandum and assembled, identified and filed seventy-three exhibits. At the request of the judge of the trial court, he compiled a detailed history of the Weckerling family and placed same in the record. It is shown that during the course of the partition action, appellees were in plaintiffs' office almost daily for consultation and advice. Copies of all letters, correspondence and documents relative to the case were furnished defendants by plaintiffs. The mentioned services extended over the period October 7, 1959, through June 26, 1962. Mr. Pittman testified that whereas he kept no exact time record, he estimated he devoted approximately four hundred sixty-one hours to the entire case.
To establish the value of the professional services rendered appellants called four attorneys to testify as experts. Two testified the services were worth $9,000.00. One felt a fee of $9,200.00 was justified under the circumstances while the remaining witness was of the opinion the nature, extent and scope of the work warranted a fee of $10,000.00. Defendants offered the testimony of two attorneys who fixed the value of the services between $1,500.00 and $2,000.00.
*711 Our learned brother below was of the opinion the services were worth in excess of $8,000.00 but decided that when the client indicated dissatisfaction with the attorney's estimated fee, the attorney was under the obligation of either making a definite fee arrangement with the client at that time or terminating the attorney-client relationship. He further believed that since the attorney failed to make his position clear when the misunderstanding arose, he was unwilling to fix the fee at an amount greater than the estimate given to the client. In so doing, we believe our esteemed colleague in effect confected a contract price where none had been reached by agreement of the parties.
The record before us is devoid of any suggestion, plea, contention or argument that appellees relied upon the statements of the attorney to their detriment so as to constitute estoppel. It likewise appears equally certain there was no meeting of the minds of the parties as to a contract price. Consequently, the sole issue before the trial court, as well as this court on appeal, was the value of the services rendered in quantum meruit.
After reviewing the record, we are convinced that considering the nature, scope and extent of the services rendered, the time devoted to the clients' affairs and the benefits derived therefrom, appellants' services were well worth the amount of the bill rendered, namely, $5,000.00. Assuming, arguendo, appellants' services were worth in excess of $5,000.00, having prayed for said sum, appellants may not recover a greater amount.
Considering next the question of the date from which interest properly accrues, we note appellants' contention interest should be allowed from the date of submission of the statement while appellees maintain interest runs only from the date of judgment. The trial court allowed interest from date of judicial demand.
The question of accrual date of interest in matters of this nature has been a recurring problem of some complexity considering the jurisprudence reflects what we believe to be inconsistencies in the cases dealing with the subject matter.
Pertinent to the issue, we note the provisions of LSA-C.C. Article 1938 which states:
"Art. 1938. Time from which legal interest is due
Art. 1938. All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated."
The text of the foregoing codal provision does not necessarily settle the issue as it has been held that until the amount of the debt is ascertained, the obligation is not due. Connette v. Wright, 154 La. 1081, 98 So. 674. The question therefore resolves itself to a determination of when an unliquidated claim becomes "due" in order to commence the bearing of legal interest.
We note that in Burk v. Livingston Parish School Board, 191 La. 364, 185 So. 284, an architect sued for a 10% fee stipulated in his contract. Although the demand therein was for a greater amount because of an unusual method of computation, the percentage of his fee was definite and the court allowed legal interest from the date his final account was rendered. In effect the court held that the fact that a dispute arose concerning the fee did not render the claim an unliquidated demand.
In a more recent case the Supreme Court has held that where a claim is predicated on quantum meruit, interest is allowable from date of judgment since it is on that date the claim becomes certain and liquidated. Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249. Despite this holding of the Supreme Court, our brothers of the Second Circuit have since held that interest on a claim for professional services *712 determined on quantum meruit is due on completion of the services, and legal interest accrues thereon from the date a statement is rendered. See Carey v. Sentell, La.App., 64 So.2d 451. We also note that prior to the Sugar Field Oil Co. case, supra, the Orleans Court of Appeal (presently the Fourth Circuit) held that interest on a claim for professional services, liquidated or unliquidated, runs from the date statement is rendered. See Friede v. Myles Salt Co., La.App., 177 So. 105. It appears, therefore, there is jurisprudence to support the positions of both appellants and appellees herein.
As regards the position taken by the trial court, namely, that interest was due from date of judicial demand, we find the jurisprudence apparently settled to the effect that interest is allowed from date of judicial demand on claims which are either ascertained or easily ascertainable and which do not bear conventional interest. See McCann v. Todd, 203 La. 631, 14 So. 2d 469; Couvillon v. Whitney Nat. Bank of New Orleans, 218 La. 1096, 51 So.2d 798. In the present case, however, we are not concerned with a claim for a fixed or readily ascertainable amount. We need not attempt, therefore, to resolve the additional problems existing in that area of the jurisprudence, except to note that the jurisprudence contains no support for the trial court's position that interest is allowable from date of judicial demand on an unliquidated claim.
Since the present claim is admittedly on quantum meruit, we feel constrained to follow the latest Supreme Court ruling as expressed in Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249, and award appellants interest on their claim from date of final judgment in the Court below, namely, September 21, 1965.
There remains the question of expert witnesses' fees which appellants maintain should be increased and appellees seek to reduce. It has been repeatedly held that the amount of expert witness fees lies within the discretion of the trial court and will not be disturbed unless the court greatly or clearly abuses its discretion in such regard. Central Louisiana Electric Company v. Williams, La.App., 181 So.2d 844; White v. American Employers' Insurance Company, La.App., 179 So.2d 542; Bryant v. Hartford Accident & Indemnity Company, La.App., 158 So.2d 263; State Through Dept. of Highways v. Riley, La. App., 143 So.2d 396.
An increase from $100.00 to $250.00 is asked herein with regard to expert witness fees allowed Messrs. Bascom Talley and Leon Sarpy, attorneys-at-law, who traveled from Bogalusa and New Orleans, respectively, as well as for Mr. Robert House, realtor, who journeyed from Lake Charles. Each of said experts spent the entire day of the trial away from his respective office. The record discloses the attorneys spent approximately two hours preparing to testify, said preparations consisting of examination of the record in the partition suit and appellants' file of the entire matter. It does not appear how much time Mr. House spent in preparing to testify concerning the value of the property at the time of its acquisition by defendants.
LSA-R.S. 13:3666 requires that the additional compensation allowed expert witnesses be fixed with reference to the value of the time employed and the degree of learning or skill required. Considering the nature of the case and the fact that each of the aforenamed experts lost an entire day from his regular calling, we find the fees awarded are grossly inadequate and should be increased to the sum of $200.00 each. This, of course, is in addition to the travel and expense allowances provided for all witnesses pursuant to the terms of LSA-R.S. 13:3661. That one witness may travel farther than another does *713 not entitle him to a greater travel allowance than is provided for in LSA-R.S. 13:3661. The law expressly fixes his travel and expense allowance and it can neither be increased nor decreased by the court. The amount of time, however, involved in travel, we believe, may properly be considered by the court in determining the additional compensation authorized by LSA-R.S. 13:3666. This is so because the latter statute expressly states the fee of an expert witness is to be determined in part by the amount of time employed. This, in our judgment, contemplates in part the total absence from his regular professional affairs occasioned from his appearing as an expert witness.
In view of the circumstances of the present case we are disposed to exercise the discretion vested in us pursuant to LSA-C.C.P. Article 2164 and assess the costs of this matter equally against appellants and appellees.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended and judgment rendered herein in favor of plaintiffs, Pittman and Matheny, and against defendants, T. H. Davidge, Jr. and David D. Davidge, in solido, in the full sum of $5,080.56, together with legal interest thereon at the rate of five (5%) per cent per annum from September 21, 1965, until paid.
It is further ordered, adjudged and decreed that the fees of the expert witnesses, Bascom Talley, Leon Sarpy and Robert House, be and the same are hereby fixed at the sum of $200.00 each and taxed as costs.
It is further ordered, adjudged and decreed that all costs of these proceedings be shared equally by appellants and appellees.
Amended and rendered.