230 So.2d 597 (1970)
H. N. NUGENT, Jr., Plaintiff-Appellee,
v.
Malcolm C. DOWNS et al., Defendant-Appellant.
No. 2962.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1970.
*598 Gold, Hall & Skye, by George B. Hall, Alexandria, for defendant-appellant.
Ford & Nugent, by William M. Ford, Alexandria, for plaintiff-appellee.
Before FRUGÉ, HOOD, and CULPEPPER, JJ.
HOOD, Judge.
Howard N. Nugent, Jr., an attorney at law, instituted this suit against Malcolm C. Downs and Mrs. Mattie Rose Downs, husband and wife, to recover attorney's fees in the amount of $1,249.81. Plaintiff bases his claim primarily on a contract of employment and, alternatively, on quantum meruit. Judgment was rendered by the trial court in favor of plaintiff and against Mrs. Downs for the amount claimed. His demands against Mr. Downs were rejected. Mrs. Downs has appealed.
Several factual and legal issues are presented, the principal questions being: (1) Was a contract of employment entered into between Nugent and Mrs. Downs under the terms of which the latter was to pay plaintiff the attorney's fees which he claims? (2) is plaintiff entitled to recover attorney's fees on quantum meruit and, if so, what amount should be allowed?
Plaintiff resides and practices law in Alexandria, Louisiana. The defendant, Mrs. Downs, is his aunt, and she also lives in that city. In June, 1966, while Mrs. Downs was visiting in New Orleans, the automobile which she was driving was struck from the rear by a vehicle being driven by William B. Rutherford. Mrs. Downs suffered personal injuries as a result of that accident.
According to Mrs. Downs, Rutherford was intoxicated at that time. Immediately after the accident occurred he handed her his driver's license, told her that he had liability insurance, and he then left the scene of the accident. The vehicle which Rutherford was driving bore a Louisiana license plate, but his driver's license was issued by the State of Colorado. For several months after the accident occurred Mr. and Mrs. Downs were unable to locate Rutherford, and thus they were unable to determine or to prove whether he was or was not insured.
Mrs. Downs returned to Alexandria after the accident occurred, where she received treatment for her injuries over a period of several months. She and her husband submitted a proof of claim to their own insurer, Hardware Mutual Casualty Company, claiming benefits under the uninsured motorist provision of the policy, and they attempted to negotiate a settlement with their insurer. They were unsuccessful *599 in that attempt, however, largely because they were unable to show that Rutherford was uninsured.
Some time during the latter part of the year 1966, Mrs. Downs consulted Mr. John H. McSween, an Alexandria attorney, and asked him to represent her in her claim for damages. He declined, but he suggested that she take her case to her nephew, H. N. Nugent, Jr. Mrs. Downs had discussed the case informally with her nephew while the latter and his wife were guests in her home, and on that occasion plaintiff had informed her that he would be happy to assist her and that if she wanted him to do so she should come to his office to discuss the matter, bringing with her the police report of the accident and all other information which she had relating to it.
During or about the month of March, 1967, Mrs. Downs went to plaintiff's office in Alexandria to discuss the matter with him, and she brought with her at that time the papers and other information which she had relating to the accident. Mrs. Downs concedes that at that time she authorized plaintiff to represent her in her claim against her insurer, including authority to institute suit in her behalf. The parties disagree, however, on the issue of whether Mrs. Downs ever agreed to pay Nugent any attorney's fee for the services which he was to render.
Plaintiff began working on the case immediately after Mrs. Downs went to his office and engaged him to represent her. At that time the jurisprudence was unsettled as to whether an insured's claim under the uninsured motorist clause was barred by prescription of one year or by prescription of ten years, and thus in order to avoid the possible running of prescription it was necessary that suit be filed on behalf of Mr. and Mrs. Downs within one year of the date of the accident. Plaintiff contacted the Alexandria attorney who represented Hardware Mutual, and worked out an agreement that the suit could be instituted in Rapides Parish rather than in Orleans Parish. On May 29, 1967, plaintiff instituted in Rapides Parish a suit for damages in behalf of Mr. and Mrs. Downs against Hardware Mutual Casualty Company and Rutherford.
After the suit was filed, plaintiff engaged in negotiations with counsel for the insurance company, received office visits from Mr. and Mrs. Downs, had telephone conferences with one or both of them, attended a pre-trial conference, and generally did all that would be expected of an attorney who was diligently representing his client's interests. Since Rutherford's whereabouts were unknown, plaintiff attempted to secure information from the State of Colorado as to his insurance or lack of insurance, but was unable to obtain any helpful information there. However, he did obtain some information in New Orleans which, together with other information supplied by Mrs. Downs, indicated that Rutherford could be located in that city. Plaintiff thereupon made a trip to New Orleans to investigate that information, and while there he discovered that Rutherford was working as a salesman for an automobile agency in a suburb of that city. Plaintiff then returned to Alexandria, informed the insurer's attorney that he had located Rutherford, and he arranged to take the deposition of Rutherford without alerting him beforehand. A court order was obtained from the district court in Rapides Parish to permit a private citizen to serve the subpoena on Rutherford a few minutes before the deposition was to be taken. Plaintiff and the insurer's attorney made a trip to New Orleans for the taking of the deposition. Rutherford was caught by surprise and he admitted, in the presence of the insurer's attorney, that he had no insurance coverage whatsoever.
The maximum liability of the company under the uninsured motorist provision of the policy was $5,000.00. About ten months after the suit had been filed, and after proof had been obtained that Rutherford was uninsured, a compromise settlement *600 was entered into by the parties under the terms of which Mrs. Downs was to receive a total of $4,500.00. The sum of $762.79 had already been paid by the insurer as medical expenses, so pursuant to the settlement agreement a check was issued by the insurer to Nugent and to Mr. and Mrs. Downs for the remaining balance of $3,737.21. This check was sent to Nugent. A disagreement then arose between Mrs. Downs and plaintiff as to the latter's fee, and the check was returned to the insurer. Another check for the same amount was then issued by Hardware Mutual payable only to Mr. and Mrs. Downs, and that check was cashed by the payees. Shortly thereafter, this suit was filed by Nugent to recover the fees and expenses which he alleges are due him for the services which he rendered.
The evidence shows that plaintiff was efficient and diligent in the performance of his services for Mrs. Downs. And, defendant concedes that the compromise settlement of her claim was satisfactory to her and that it was obtained through Nugent's efforts.
Plaintiff Nugent testified that he specifically informed Mrs. Downs when she first came to his office and engaged him to represent her that he would accept employment as her attorney in the case, and that "the fee was going to be one-third of everything I collected for her." According to Nugent, Mrs. Downs' response to that statement was "* * * that's fine, get as much as you can." Plaintiff testified that about one year later, shortly after he received the settlement check from the insurer, he advised Mrs. Downs by telephone of the payment and informed her that his fee would be 30 per cent of that amount, or $1,121.16, and that in addition thereto he was to be reimbursed for the expenses which he had incurred amounting to $128.65. Nugent testified that Mrs. Downs registered no objection to the fee at that time, but that she merely told him that he would have to talk to her husband. Nugent explained that although the contract of employment which he entered into with Mrs. Downs specifically provided for a fee of one-third the amount collected, he voluntarily reduced it to 30 per cent because of his relationship to the defendant.
Mrs. Downs was the daughter of an attorney, now deceased, and she has been associated with the legal profession during most of her life. She testified that she has had legal work done for her on other occasions and that she has "never paid an attorney fee in my life." She stated that she has been intimately acquainted with plaintiff since the date of his birth, that as his aunt she has always been interested in and very fond of him, that she has had him as a guest in her home frequently, that she has kept photographs and newspaper clippings of him for many years, and that she has actively supported him on every occasion when he was a candidate for public office. She said that in view of all of these facts she did not expect to pay him a fee for the services he agreed to render for her in her claim for damages. She stated, "I didn't have any idea of paying him any fee," and "I had no idea he would charge me."
Mrs. Downs testified that "not one word" was said about a fee when she discussed the case with plaintiff, that Nugent did not quote her any fee and that she did not agree to pay one. She denies that plaintiff advised her by telephone after the check was issued in payment of the compromise settlement that his fee would be 30 per cent of the amount collected. Her testimony is that Nugent informed her orally while they were in the court house on another matter that he had the check, and he asked her to stop by his office and pick it up. She then had her husband pick up the check, and she later was informed by her husband that plaintiff intended to charge her a fee for handling the case.
On April 17, 1968, shortly after Nugent had received the check from Hardware Mutual, Mrs. Downs wrote to plaintiff advising that she was "shocked at the fee" he *601 was charging, that "certainly I did not expect you to do it for nothing," and that she was going to write to each member of the Alexandria Bar Association and "ask if it is a reasonable fee." Plaintiff wrote to defendant on April 19 informing her that they had originally agreed on a fee of one-third of the amount received, and that he had voluntarily reduced it to 30 per cent. Mrs. Downs replied by letter on April 22, 1968, denying that there had been an agreement as to a fee, and she enclosed a check made payable to plaintiff for $128.65 as reimbursement of his expenses. Plaintiff has never cashed that check. Mrs. Downs then discharged plaintiff as her attorney. The check which had been sent to Nugent as payment of the compromise settlement was returned to the insurer and, as we have already noted, another check for the same amount was issued payable to Mr. and Mrs. Downs.
The trial judge, accepting plaintiff's version of the facts, concluded that "the preponderance of the evidence establishes a contract between plaintiff and Mrs. Malcolm C. Downs," and that "there is enough evidence to support plaintiff's action on a contractual basis." He also concluded that even if this is not true, there is "abundant evidence" to support plaintiff's claim for attorney's fees on a quantum meruit basis.
We cannot say that the trial judge erred in finding that a contract of employment was entered into between Nugent and Mrs. Downs, as contended by plaintiff. The evidence convinces us, however, that in any event plaintiff is entitled to recover the full amount claimed as attorney's fees and expenses on quantum meruit and we thus prefer to base our decision on that ground.
An attorney is entitled to be paid for his services. Where there is no express contract fixing his fee, he is entitled to remuneration for services rendered on quantum meruit. The facts to be considered in evaluating his services are the extent and nature of the litigation; the labor, time and trouble involved; the result achieved; the character and importance of the matter; the amount of money involved; the learning, skill and experience exercised; and the difficulty of the legal problems. Hargrove, Guyton, Van Hook & Ramey v. Blanchard, 216 So.2d 127 (La.App. 2 Cir. 1968); In re Interstate Trust & Banking Company, 235 La. 825, 106 So.2d 276 (1958); Henriques v. Vaccaro, 218 La. 1020, 51 So.2d 611 (1951); Pittman and Matheny v. Davidge, 189 So. 2d 706 (La.App. 1 Cir. 1966); Dwyer Lumber Co. v. Murphy Lumber and Supply Co., 126 So.2d 19 (La.App. 1 Cir. 1960); Boies v. Faust, 181 So.2d 833 (La.App. 2 Cir. 1966); Herman v. Jambois, 205 So.2d 63 (La.App. 4 Cir. 1968).
In the instant suit two prominent Alexandria attorneys, Lewis O. Lauve and Leonard Fuhrer, testified that in their opinions the fee which plaintiff claims here is fair and reasonable. Prior to the trial, both of these witnesses examined the record in the suit which plaintiff had filed in behalf of Mr. and Mrs. Downs, and they discussed with plaintiff the nature of the work which he had performed in connection with the case. No expert testimony was produced by defendant to contradict the opinions expressed by Mr. Lauve and by Mr. Fuhrer.
Although counsel for defendant argues strongly that a fee of $500.00 plus expenses would be adequate, we agree with the trial judge that a fee of 30 per cent of the amount collected is a fair and reasonable fee for the services which plaintiff rendered for defendant. We conclude, therefore, that plaintiff is entitled to recover attorney's fees in the amount of $1,121.16, plus expenses in the sum of $128.65, making a total award of $1,249.81.
Defendant contends further that the trial judge erred in awarding expert witnesses fees to the attorneys who testified in behalf of plaintiff as to the reasonableness of the fee which plaintiff claims on a quantum meruit basis.
*602 In Roy O. Martin Lumber Co. v. Sinclair, 220 La. 226, 56 So.2d 240 (1951), our Supreme Court held that attorneys are officers of the court and that when they are present in court and called to testify as to the value of services rendered by another attorney, expert witness fees cannot be allowed to those attorneys. See also Williams v. Fire Ass'n of Philadelphia, 193 So. 202 (La.App. 2 Cir. 1939).
Plaintiff points out, however, that in the recent case of Pittman and Matheny v. Davidge, supra, expert witness fees awarded by the trial court to attorneys who testified as to the value of services rendered by another attorney were upheld by the First Circuit Court of Appeal. Applications for writs of review filed by plaintiff and defendant were denied by the Supreme Court (see 249 La. 768, 191 So.2d 143), but it appears that this issue was not cited as error to the Supreme Court. Two justices dissented and one concurred in the denial of the writs, and in doing so some of them pointed out the error made by the trial court in awarding expert witness fees to attorneys in cases of this kind. A review of the Court of Appeal opinion in that case indicates to us that no issue was presented to that court as to the legality of allowing expert fees to attorneys who testify under those circumstances. In our opinion the decision rendered in the Pittman case did not change the rule which was applied in Roy O. Martin Lumber Co. v. Sinclair, supra.
Our conclusion is that the trial court erred in awarding expert witness fees to the attorneys who testified in behalf of plaintiff, and that the judgment appealed from must be amended accordingly.
Defendant contends, finally, that the trial court erred in awarding plaintiff interest from the date he rendered a statement of his charges to Mrs. Downs, rather than from date of judicial demand or date of judgment.
Our Civil Code provides that "All debts shall bear interest at the rate of five per cent per annum from the time they become due, unless otherwise stipulated." LSA-C.C. Art. 1938. In Lofton v. Great American Insurance Company, 213 So.2d 333, (La.App. 3 Cir. 1968), we held that an insured who was entitled to recover the amounts paid as premiums on insurance policies in excess of the earned premiums was also entitled to interest from the date the insurer canceled the insurance policies because such action created a debt owed by the insurer to the insured which became due when the policies were canceled.
In Hargrove, Guyton, Van Hook & Ramey v. Blanchard, supra, the court awarded interest on a judgment for attorney's
fees from the date the statement for the fee was mailed to the defendant. Writs of review were denied by the Supreme Court of Louisiana with the notation that the court found no error of law in the judgment of the Court of Appeal. See 253 La. 321, 217 So.2d 413 (1969).
In Pittman and Matheny v. Davidge, supra, the Court of Appeal, First Circuit, awarded legal interest from the date of the final judgment rather than from some earlier date. As in the case of the expert witness fees, however, neither party questioned the correctness of the court's decision with respect to legal interest when writs were sought from the Supreme Court. The justices of the Louisiana Supreme Court who dissented from or separately concurred in the denial of writs indicated that the Court of Appeal was incorrect. See 249 La. 768, 191 So.2d 143 (1966).
We think the trial judge correctly awarded legal interest from the date the statement for services rendered was delivered by plaintiff to Mr. Downs, but in our view, that date was April 5, 1968, rather than April 2, 1968, as found by the trial judge.
For the reasons herein assigned, the judgment appealed from is hereby amended to delete therefrom the awards of expert *603 witness fees made to the practicing attorneys who testified on behalf of plaintiff as to the value of services rendered by plaintiff to defendant. The judgment is also amended to provide that legal interest shall accrue on the award made by the trial judge from April 5, 1968, until paid. As amended, the judgment is affirmed. The costs of this appeal are assessed to Mrs. Mattie Rose Downs, defendant-appellant.
Amended and affirmed.