DOMENGEAUX, Judge.
This is a jury case in which the plaintiff, in proper person, takes this appeal from a directed verdict entered in favor of the defendant after plaintiff rested his case. Plaintiff also appeals the trial court determinations that plaintiff is not entitled to a new trial and that defendant is entitled to attorney’s fees under C.C. Art. 2315.1. Plaintiff further alleges that numerous procedural errors were committed by the trial court. For the following reasons, we affirm the directed verdict.
Directed verdicts are authorized by La.C.C.P. Article 1810, which provides in pertinent part as follows:
“Art. 1810. Directed verdicts; motion to dismiss at close of plaintiff’s evidence
A. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
Although Article 1810 A establishes no standard to be used in determining a party’s right to a directed verdict, this court set forth the standard in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979) at page 239:
“. [SJince the source of LSA-C.C.P. article 1810A is the Federal Rules of Civil Procedure, we believe that the correct standard is that applied in the Federal Courts. See Madison v. Travelers Insurance Company, 308 So.2d 784 (La. *95 1975). This standard is succinctly stated in the following language penned by the U.S. Fifth Circuit Court of Appeal in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969):
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s ease — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable'and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.” (Emphasis added)
Applying the above standard, and considering the evidence in the light most favorable to Mr. Joiner, the plaintiff, we conclude that the trial judge was correct in granting the motion for a directed verdict, and agree with his reasons for doing so.
The record reflects the following. Plaintiffs “PETITION FOR COMPENSATION AND FOR DAMAGES”, which in reality is only a defamation suit,[1] is based entirely on two letters composed and sent by defendant in his capacity as an attorney for his client during the course of the proceedings in Jones v. Youngblood and Joiner (La.App. 3rd Cir. 1978, Docket No. 6453, unpublished opinion). In that prior suit, the defendant in these proceedings, Mr. Downing, represented Mrs. Youngblood and filed a third party demand on her behalf against her co-defendant, Mr. Joiner. In connection with this third party demand, Mr. Downing sent the following correspondence to the Department of Occupational Standards in Baton Rouge on June 4, 1976:
“Mr. Wayne D. Joiner is a licensed realtor. He was employed by Mrs. Ora Youngblood to sell certain property located in and around Hot Wells, Louisiana, to Mr. John Jones of New Orleans. Mr. Jones gave a large deposit to Mr. Joiner which was to be his commission should the sale go through. Before the sale was consummated the building on the property burned. Under Louisiana Law, the buyer is no longer obligated to purchase the property.
Mr. Joiner has failed and refused to return the deposit to Mr. Jones. Mr. Jones has sued both Mrs. Youngblood and Mr. Joiner. Our firm represents Mrs. Young-blood. We would appreciate your having Mr. Joiner investigated, and requiring him to return this deposit to Mr. Jones. We would also appreciate your sending us a copy of the bond which he filed with you so that we may institute suit against the bonding company.
Please send a. copy of Mr. Joiner’s bond to me as soon as possible to avoid economic hardship to Mrs. Youngblood.”
Ten days later, Mr. Downing sent this letter to Western Surety Company, the issuer of Mr. Joiner’s real estate bond:
“Our firm represents Ora Cripps Young-blood. Mrs. Youngblood retained the services of Wayne D. Joiner, real estate broker, to sell property owned by her at Hot Wells, Louisiana. Mrs. Youngblood entered into a contract to buy and sell with Mr. John E. Jones of New Orleans. Under the terms of this contract to buy and sell, Wayne D. Joiner, as broker, received $2,450.00 to apply to the purchase price upon the execution of the deed. Before the execution of the deed the improvements on the property burned. Mr. *96 Joiner refused to return the deposit to Mr. Jones. Under Louisiana Law, if the improvements are destroyed before the deed is passed, the contract is void and all deposits must be returned to the purchaser.
As a result of Mr. Joiner’s. failure to repay Mr. Jones, Mr. Jones instituted suit against Mrs. Youngblood and Mr. Joiner. We filed a third party demand against Mr. Joiner for any amounts for which Mrs. Youngblood would be liable to Mr. Jones. We have taken a judgment against Mr. [Joiner] in the amount of $2,450.00, with legal interest at the rate of 8% from March 26, 1976 until paid and for the costs of the legal proceedings. Under the provisions of LSA-R.S. 37:1447B [37:1447 B] we are entitled to recover these damages from Mr. Joiner’s real estate bond. The Louisiana Real Estate Commission advises me that Mr. Joiner’s bond was in effect at the time of this wrongdoing.
Enclosed is a copy of the petition in the above mentioned suit, and a certified copy of our judgment against Mr. Joiner. Please inform me as soon as possible whether you will pay this judgment or whether I should institute suit to recover this amount.”
The judgment referred to in this second letter was a default judgment taken on June 11, 1976, against Mr. Joiner by Mr. Downing on his client’s behalf. Joiner contends that the default judgment was wrongfully taken. The evidence does not support plaintiff’s contention. Instead, the evidence shows the default judgment was properly taken, but that it was later voluntarily withdrawn by Mr. Downing, probably at the request of the judge who signed the judgment. Approximately one year later, in the same suit but after a trial on the merits, judgment was again rendered in favor of Mrs. Youngblood and against Mr. Joiner for the same amount as the default judgment.
Using the following language with which we agree, the trial court explained why Mr. Joiner did not prove his defamation suit and why attorney’s fees were imposed.
“Defamation is ‘an invasion of the interest in reputation and good name.’ Handbook of the Law of Torts, Sec. 111, at 737 (4th Ed. 1971) Prosser. A person is defamed when one party communicates to another party words or a statement which exposes the person to contempt, hatred, ridicule or condemnation.
Essential elements a plaintiff must prove in order to succeed in a defamation action are: 1) defamatory words, 2) publication or communication by the defendant to one other than the party alleged defamed, 3) Falsity of the statement at the time the statement was made, 4) actual or implied malice and 5) resulting injury. Lees v. Smith, 363 So.2d 974 (3rd Cir. 1978).
With the exception of communication/publication, Wayne Joiner has failed to prove any of the elements listed above. There was evidence that two letters were written by Robert Downing (on behalf of his client, Mrs. Ora Youngblood) which can constitute publication. The letter to Western Surety Company informed that company that Wayne Joiner who was bonded by the company, had been third-partied and a judgment had been taken against him. The letter stated the rights of Robert Downing’s client under R.S. 37:1447B [37.1447 B] (all references to Revised Statutes Title 37 are to the specific provisions in effect at the time of the activity involved) to proceed against the bonding company. Inquiry was made as to whether payment would be made or if there was a need to institute suit.
According to R.S. 37:1447 Downing could have instituted suit on behalf of his client against Western Surety even without first obtaining a judgment against Joiner. Instead of instituting suit, Downing first requested payment from the company.
The judgment Downing took against Joiner was rescinded by joint motion, after which the matter proceeded to trial. After the trial the plaintiff was awarded *97 the same amount she would have received in the original judgment against Joiner.
The other letter was written to the State of Louisiana, Department of Occupational Standards informing that agency that Wayne Joiner had acted as a real estate broker of property belonging to Downing’s client, and that Joiner had refused to return a purchaser’s deposit when the purchaser lawfully rescinded the agreement (due to a fire). Downing wrote ‘We would appreciate your having Mr. Joiner investigated . . . ’.
R.S. 37:1453 provides for an investigation of a real estate broker when the commission receives a verified complaint in writing, from any person. Also, the commission is at liberty to institute an investigation on its own motion.
The letter to the commission was in good faith. R.S. 37:1454[A](4) states that a license may be suspended or revoked for:
‘Failure to account for or to pay over any monies belonging to others coming into the possession of the licensee whenever legally obligated, or failure to deposit monies or things of value received on behalf of clients in a separate banking account . . . ’
As pointed out at the defamation trial, Joiner did neither of the above.
I found that Mr. Downing did what any other attorney diligently representing his client would have done. It is part of an attorney’s daily practice to write demand letters on behalf of clients. The letters were relevant, made with probable cause and without malice. The communications were made in good faith, pertaining to a subject in which Downing’s client had an interest and they were made to parties having a corresponding interest or duty. Ward v. Sears Roebuck & Co. [La.App.] 339 So.2d 1255. Downing was attempting to serve his client in a manner appropriate to the situation.
Civil Code Article 2315.1(B) (effective July 29, 1976) states in part:
‘Should plaintiff in any action for defamation, libel or slander not prevail, and judgment be rendered in favor of the defendant, reasonable attorney’s fees may be awarded to the defendant as an item of taxable costs if the court determines that the action was frivolous . ’ (underscoring added)
This defamation suit was filed after the effective date of Civil Code Article 2315.1, therefore the article is applicable.
I find that the suit was frivolous. This is apparent since only one of five essential elements was proved. The directed verdict was granted because of the serious lack of sufficient evidence.
I find that Robert Downing qualifies for an award of attorney’s fees. His pleadings included a prayer that plaintiff pay costs. The code article in point is very specific in classifying attorney’s fees in a defamation suit as an item of taxable costs. The defendant’s analogy that these fees should be likened to expert witness fees is well founded. The case cited by plaintiff in his behalf is not in point. Pittman v. Davidge, 189 So.2d 706 (1st Cir. 1966). In Pittman the main issue was the recovery for services rendered. That case was in the nature of a regular suit in which attorney’s fees must be specifically pleaded. Civil Code Article 2315.1 makes an exception to that general principle.
Charles F. Nunnally, III, and James Boren served as legal counsel for Robert Downing. Nunnally was hired by Appalachian Insurance Company which had a contractual obligation to defend Downing. Boren was hired directly by Downing.
Boren, charging $50.00 per hour for his services, devoted 15 hours of in-court time to this trial. Nunnally worked 60.55 hours at $50.00 per hour on the case outside of court. He also spent 15 hours in court for which he testified he normally charges $75.00 per hour.
Boren’s total is $750.00. Nunnally’s is $4,152.50. As to Nunnally, the collateral source rule as to recovery applies. Womack v. Travelers Insurance Company, 258 So.2d 562. Hall v. State of Louisiana, *98 through Department of Highways, [La.App.] 213 So.2d 169 (3rd Cir. 1968), writs refused [252 La. 959] 215 So.2d 128.
In awarding attorney fees, I do not feel that the Courts are bound by the agreements between attorneys and their clients. Therefore, I fix the attorney fees in the amount of $3,000.00 to be taxed as costs.
Attorney Dee Drell was tendered and accepted as an expert legal witness and testified during the trial. His expert witness fee is fixed at $100.00 and taxed as costs.”
Plaintiff contends that numerous other errors were committed by the trial court. We have carefully considered all twenty-four[2] of Mr. Joiner’s allegations of procedural irregularities and incorrect evi-dentiary rulings, and find that, with the possible exception of error # 8, all of plaintiff’s allegations are without merit. No purpose would be served to list plaintiff’s specifications of error, many of which demonstrate a lack of knowledge of basic and well-established rules of evidence and of trial procedure. By appearing in proper person, Mr. Joiner assumes all responsibility for his inadequacy and lack of knowledge of procedural and substantive law. Delesdernier v. Gene Thorpe Finance, Inc., 225 So.2d 485 (La.App. 4th Cir. 1969); Alexander v. Town of Jeanerette, 371 So.2d 1245 (La.App. 3rd Cir. 1979).
In his specification of error # 8, plaintiff argues that La.C.C.P. Art. 5185, paragraph 2, grants him the right, as one proceeding in forma pauperis, to the compulsory attendance of witnesses without the necessity of pre-paying the witness fees. Joiner contends that the Rapides Parish Clerk of Court’s Office required him to pre-pay $88.00 before that office would subpoena his witnesses. Presumably the Clerk’s Office was acting in accordance with La.C.C.P. Article 1353, which requires the pre-payment of all witness fees before a witness will be subpoenaed. In light of the possible conflict in these provisions, we must conclude that the more recently enacted statute—Article 5185, paragraph 2, is an exception to the general rule established by the older statute—Article 1353. Thus, in all cases in which the pauper laws are not invoked, the general provision of Article 1353 will apply. With this construction, the apparent conflict between the statutes is easily reconciled and both laws will continue to have effect. Legros v. Conner, 212 So.2d 177 (La.App. 3rd Cir. 1968).
Even though the Clerk’s Office would be wrong in requiring plaintiff to pre-pay witness fees, we can grant plaintiff no relief. Nothing filed in the record [3] indicates that plaintiff paid $88.00 or that he was in any way prejudiced if he did pay. The record shows that the trial court was never informed of this alleged violation of Article 5185 until after the directed verdict was granted. Inasmuch as plaintiff lost his suit and was held liable for costs, he would have had to pay the witness fees anyway. Although plaintiff’s alleged hardship is regrettable, there is insufficient evidence presented on this point to justify a reversal or a remand.
For the above and foregoing reasons the judgment of the District Court is affirmed in all respects. Costs of this appeal are assessed against the plaintiff-appellant, Mr. Wayne Joiner.

AFFIRMED.

. “Libel and slander” are the common law equivalents of and are indistinguishable from “defamation” in Louisiana. Also the “compensation” and “damages” claimed by the plaintiff are simply consequences of Mr. Downing’s alleged wrongdoing. The damages, even if they had been proven (which they were not) would have been recoverable only if the plaintiff had first successfully shown that Mr. Downing was guilty of defamation.

. Allegations 22, 23, and 24 were inadvertently numbered 21, 22, and 23.

. There is some correspondence in the record between plaintiff and the Deputy Clerk of Court. However, these letters were not filed into the record nor were they offered as evidence during the trial. Their appearance in the record is unexplained.