HOOD, Judge.
This is a workmen’s compensation suit instituted by Mrs. Laura T. Frame, individually and on behalf of her minor children, against Billy Majors and his liability insurer, The Travelers Insurance Company. Plaintiff alleges that her husband, Earl Edward Frame, Sr., died as a result of an accident which occurred while he was working for defendant Majors. Judgment on the merits was rendered by the trial court in favor of defendants, and plaintiff has appealed.
The principal issue presented is whether the evidence shows a causal connection between the accident and the death of the employee.
The decedent, Earl Edward Frame, was working as a truck driver for defendant Majors on September 12, 1966. On that date he was dispatched by his employer to haul a load of gravel from Erwinville to St. Martinville, Louisiana. He made the delivery, and shortly before he began the return trip that afternoon he was stung on *67 the right forearm by a bee. About - an hour later, while driving his employer’s truck back to Erwinville, he became ill. His symptoms at that time consisted of weakness, nausea, vomiting and some paralysis on the left side of his body. He was unable to continue driving and it became necessary for another employee to drive his truck the remaining distance to Erwin-ville.
The following day, September 13, 1966, he consulted Dr. J. W. Plauche, a general practitioner, who examined him and immediately referred him to Charity Hospital, in New Orleans.
The decedent was admitted to the Charity Hospital the next day, September 14, 1966, where he was examined and treated. By September 18, he had recovered the function of his left leg and sensation in his left arm, but his left hand was still paralyzed. He was permitted to leave the hospital to return to his home for the weekend of September 17 and 18, but he re-entered the hospital on the last mentioned date. On September 19, an angiogram was performed which showed that he had a partial obstruction of the right carotid artery. This obstruction was caused by arteriosclerosis which existed before the accident occurred, and which had progressed to the extent that prior to the accident the decedent had an 80 percent stenosis, or closure, of the right carotid artery. The medical experts who testified agree that the accident did not cause the arteriosclerosis or the 80 percent ste-nosis or closure of this artery.
Pursuant to recommendations made by the physicians who were treating the decedent at Charity Hospital, surgery was performed at that institution on September 27, 1966, to relieve the stenosis or partial closure of the carotid artery. The surgical procedure was described as “a right internal carotid endarterectomy with saphenous vein patch graft.” About eight hours after this surgery was performed, the decedent developed a thrombosis. Surgery was performed a second time to relieve the thrombosis, and later a tracheostomy was done. The patient died on September 30, 1966, as a result of the thrombosis which occurred following the first surgery.
Dr. Plauche, who examined the decedent initially, diagnosed his condition on the day after the accident as a “cerebral vascular accident causing left hemiplegia.” He later examined the reports of the Charity Hospital, and from the information contained in those reports and that which he obtained through his own examination, he concluded that there was no causal relationship between the bee sting and the decedent’s subsequent paralysis or his death. He testified that the hemiplegia, or paralysis, was caused by an occlusion of one of the large arteries of the neck, and that the decedent’s death was caused by another occlusion or thrombosis following surgery. He is of the firm opinion that a bee sting cannot cause an occlusion or thrombosis, and thus that there is no causal relationship between the bee sting and the hemiplegia or death of Mr. Frame.
In response to questions as to whether there was a causal relationship between the bee sting and the decedent’s paralysis or death, Dr. Plauche stated “I can’t frankly say it had anything to do with it. I just don’t believe it did.” He testified, “I think the man would have had a complete occlusion of the carotid artery no matter what would have happened — no matter where he had been, what he had been doing or what conditions occurred,” and that in his opinion it is “not even possible” that the bee sting was causally related to the occlusion which caused the decedent’s first episode of paralysis or his death.
The only other medical expert who testified at the trial was Dr. Henry B. Harvey, Jr., who specializes in internal medicine. Dr. Harvey did not see the decedent, but he did examine the reports of the New Orleans Charity Hospital relating to the treatment which was administered to him. Plaintiff relies substantially on the following portions of Dr. Harvey’s testimony to support her claim that there was a causal *68 connection between the accident and the decedent’s death:
“On the basis of what I can ascertain from this case, I feel that something occurred which caused this patient to have further impairment of an already impaired circulation in the right carotid artery. With the patient presumed in the same state of health that he always was up until the time at which he began driving his truck that afternoon, it is my medical opinion that this patient had a reaction to the insect bite, presumed bee; that this in turn caused systemic symptoms which have been described as nausea and vomiting, and that this caused the patient to have a vascular reaction, most probably hypotension, and impaired circulation to the degree that the patient had the left hemiplegia.”

“It is my opinion in reviewing the case that probably what happened is that a situation arose, and in this case it was the bee sting, which caused the patient to become ill, which in turn aggravated an already existing condition.”

“It was my opinion that because of the chain of events that occurred, that this patient was stung by a bee, that the bee had a systemic reaction secondary to the sting such that the vascular supply through an already compromised vessel was insufficient and produced the symptoms.”
Although Dr. Harvey feels that the bee sting caused the paralysis, he makes it clear that there was no causal connection between the bee sting and the 80 percent stenosis, or closure, of the right carotid artery. This stenosis, the doctor explained, existed before the accident occurred. It was not aggravated or made symptomatic by the bee sting, and it did not cause the decedent’s paralysis. Surgery was performed, he said, not to correct the paralysis or any condition which may have been caused or brought about by the bee sting, but instead it was performed to correct the stenosis or partial closure of this artery, a pre-existing anatomical defect which was merely discovered while they were treating the decedent for the paralysis. The doctor’s testimony, in part, is :
“A. The surgery that was performed was performed to occlude the partial stenosis which was present.”
******
“Q. Do you think that bee sting caused that atheroma ?
“A. No, sir.”
* * * * * *
“A. My assumption is that in evaluating this patient they found that he had this occlusion, 80%, and felt that this should be corrected, and this is what this was done for.
“Q. And that 80% occlusion was not caused by any bee sting?
“A. No, sir.”
******
“A. I think that the only thing that the bee sting had to do with the operation was that it called attention to the fact that the patient had an anatomical defect — ”
******
“A. That’s what I stated; the bee sting caused the patient to have an episode — in my opinion it caused the patient to have this episode which caused them to investigate why this could have occurred, and they found the problem.”
Our interpretation of Dr. Harvey’s testimony, as we have already pointed out, is that there was a causal connection between the bee sting and the decedent’s subsequent paralysis, but there was no such connection between the bee sting and the decedent’s arteriosclerosis or stenosis. Surgery was performed, not to correct the paralysis, but instead to correct the pre-existing stenosis of the right carotid artery, which condition had nothing to do with the bee sting. The *69 surgery was not made necessary by the accident or by any disability which may have resulted from that accident, and thus there was no causal relationship between the accident, on the one hand, and the surgery, the thrombosis or the decedent’s death, on the other.
The trial judge concluded that plaintiff had failed to show a causal connection between the bee sting and the subsequent death of the decedent. To hold that the medical evidence preponderates in favor of the plaintiff, the trial judge said, would be “pure conjecture and speculation.”
Under our jurisprudence, the claimant in a workmen’s compensation suit has the burden of proving his case by a preponderance of the evidence, as does the plaintiff in any other civil suit. This includes the burden of establishing a causal connection between the accident and the subsequent disability or death of the injured employee. Page v. Home Indemnity Company, 168 So.2d 409 (La.App.2d Cir. 1964); Oestriecher v. Mutual Life Insurance Company of New York, 167 So.2d 461 (La.App.4th Cir.1964).
The testimony of the physician who examined an injured employee immediately after the injury occurred may be, and usually is, accepted in preference to that of a physician who examined him subsequently, or who did not have an opportunity to examine him at all. Royer v. Carey, 145 So. 381 (La.App.lst Cir. 1933). The opinions expressed by a specialist in some field of medicine on matters which fall within his field of specialization usually are preferred to those expressed by a general practitioner. Ware v. Missouri Valley Dredging Company, 177 So.2d 788 (La.App.3d Cir.1965); Murphy v. American General Insurance Company, 122 So.2d 100 (La.App.2d Cir.1960). It is the duty of the trial judge, however, to seek the .truth, and he should evaluate the testimony of the medical witnesses according to the same rules that apply to other witnesses. Williams v. Southern Advance Bag & Paper Company, 87 So.2d 165 (La.App.2d Cir. 1956).
We have examined the evidence carefully with these rules in mind, and we have concluded, as did the trial judge, that the evidence fails to show a causal connection between the accident and the death of plaintiff’s husband. We must affirm that part of the judgment appealed from, therefore, which rejects plaintiff’s demands for compensation benefits because of the death of Mr. Frame.
Plaintiff argues, alternatively, that even though there may be no causal connection between the bee sting and the decedent’s death, the evidence nevertheless shows that plaintiff was disabled from the date of the accident until his death, that this disability was caused by the bee sting, and that she thus is entitled to recover compensation benefits for the short period of time which intervened between the accident and the date of his death.
The evidence shows that the decedent became disabled within a period of about an hour after he was stung by the bee. He quickly recovered from the nausea and vomiting, and within six days, or by September 18, he recovered partially from the hemiplegia, or paralysis. Dr. Harvey testified that the records of Charity Hospital indicated that the decedent had “very little paralysis” as of the last mentioned date. The evidence does not show, however, that Mr. Frame ever regained the full use of his left hand, and we are convinced that he continued to be disabled up to the time of his death on September 30.
Dr. Harvey is of the firm opinion that the bee sting started a chain of reactions which eventually resulted in the hemiple-gia, or paralysis, suffered by the decedent. He thus concluded that there was a causal relationship between the bee sting and the subsequent paralysis, or disability, of the decedent. Dr. Plauche, as already noted, felt that there was no causal relationship between the accident and the disability.
*70 We are inclined to accept the opinion expressed by the specialist, Dr. Harvey, as to the causal connection between the accident and the subsequent disability. Our conclusion, therefore, is that the decedent was disabled as a result of the accident from the date the injury was sustained until his death occurred, a period of 18 days.
No question has been raised as to the plaintiff’s right to assert a claim for the compensation benefits due up to the time of the decedent’s death, and no exceptions have been filed challenging her right or capacity to claim them individually and for her children. We find, therefore, that plaintiff, individually and in behalf of her minor children, is entitled to recover the compensation benefits which accrued prior to the decedent’s death. Since no benefits are due for the first week (LSA-R.S. 23:1224), plaintiff is entitled to recover workmen’s compensation payments, at the rate of $35.00 per week, for the remaining eleven days. According to our figures this amounts to $55.00.
The judgment appealed from is reversed, therefore, and judgment is hereby rendered in favor of plaintiff, Mrs. Laura T. Frame, individually and in behalf of her minor children, Annie Lillian Frame, Stacy Lynn Frame and Earl Edward Frame, Jr., and against defendants, Billy Majors and The Travelers Insurance Company, in soli-do, condemning said defendants to pay to plaintiff the sum of $55.00, with legal interest thereon from September 30, 1966, until paid, and all costs of this suit. The costs of this appeal are assessed to defendants-appellees.
Reversed and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents and assigns written reasons.
MILLER, J., dissents.
On Application for Rehearing.