HOOD, Judge.
Whitney D’Avy, Jr., instituted this suit to recover workmen’s compensation benefits, with penalties and attorney’s fees. The defendant is Bituminous Casualty Company, the compensation insurer of plaintiff’s employer. Judgment was rendered by the trial court in favor of plaintiff, awarding him benefits based on total and permanent disability, plus penalties and attorney’s fees. Defendant has appealed.
The issues are: (1) Did the trial judge abuse his discretion in granting a new trial ? (2) Is plaintiff totally and permanently disabled? (3) Should penalties and attorney’s fees be awarded ? (4) Should the amount of expert fees allowed by the trial court be reduced?
D’Avy sustained an injury to his left knee on March 6, 1969, when he fell from a scaffold while working as a bricklayer for Industrial Construction Company. He was treated by Dr. Edmund C. Campbell, an orthopaedic surgeon, from the date of the accident until January 15, 1970. Dr. Campbell diagnosed D’Avy’s injury as a small tear of the medial meniscus of the left knee. He performed surgery on the knee, and plaintiff returned to light work as a bricklayer in November, 1969. Dr. Campbell discharged plaintiff on January 15, 1970, as being able to return to his full duties as a bricklayer by February 1, 1970, although he found that plaintiff had a 15 percent permanent partial loss of the use or function of his left lower extremity. On *647 January 28, 1970, he submitted a report to defendant of his findings as to plaintiff’s ability to work and of the IS percent partial loss of use or function of his leg.
Defendant paid workmen’s compensation benefits to plaintiff at the rate of $45.00 per week for 47 weeks, beginning March 6, 1969. It discontinued paying those weekly benefits on January 28, 1970, when it received the above mentioned report from Dr. Campbell. This suit was filed on February 16, 1970, and it was tried originally before the late Judge Clement M. Moss on April 22, 1970.
Plaintiff was examined by Dr. George P. Schneider, an orthopaedic surgeon, on April 13, 1970, shortly before the trial. The only witnesses who testified at the trial were plaintiff, Dr. Campbell and Dr. Schneider.
Judge Moss determined that as a result of the accident D’Avy sustained a 15 percent partial loss of the use or function of the left leg, but that he nevertheless could perform all of the duties of a bricklayer, without substantial pain. He concluded that D’Avy was entitled to compensation benefits based on a 15 percent permanent loss of use or function of the left leg, under LSA-R.S. 23:1221(4). He also found that defendant had discontinued the payment of compensation benefits without probable cause, and that plaintiff is entitled to recover penalties and attorney’s fees. Judgment thus was rendered by Judge Moss on July 8, 1970, condemning defendant to pay compensation benefits to plaintiff at the rate of $20.37 per week for 175 weeks, for the partial loss of function of the left leg, subject to credit for the compensation benefits previously paid. The judgment also condemned defendant to pay to plaintiff the medical expenses which had been incurred, a penalty of 12 percent on the balance of $1449.75 due as compensation benefits, and $500.00 as attorney’s fees.
Judge Moss died after that judgment was rendered and before a formal decree was signed. Judge Jack Rogers was appointed to succeed Judge Moss, and Judge Rogers signed a decree on September 9, 1970, in accordance with the judgment which had been rendered by the judge before whom the case was tried. A motion for new trial was filed by plaintiff on the day that decree was signed, however, and thereafter Judge Rogers ordered a new trial, limited to certain issues. The next day, on motion of plaintiff, Judge Rogers appointed Dr. Norman P. Morin, another orthopaedic surgeon, to examine plaintiff.
The second trial of the case took place before Judge Rogers on March 17, 1971. The only witnesses who testified at that trial were plaintiff, Dr. Morin and four lay witnesses. Dr. Campbell and Dr. Schneider did not testify at the second trial.
Following that trial, Judge Rogers concluded that plaintiff was totally and permanently disabled. He rendered judgment on March 29, 1971, amending the judgment previously rendered, and awarding plaintiff compensation benefits at the rate of $45.00 per week for 500 weeks, commencing on March 6, 1969, plus medical expenses, penalties of 12 percent of $1449.75, and attorney’s fees of $2000.00, all of which awards are subject to credit for payments previously made by defendant. Defendant has appealed from that judgment.
Defendant contends, first, that Judge Rogers exceeded his judicial discretion in granting a new trial. In assigning reasons for ordering the new trial, Judge Rogers stated that there was a serious dispute as to disability and that “on application of either party the court will appoint Dr. Norman Paul Morin to examine Whitney D’Avy, Jr.” Shortly thereafter the appointment was made on motion of plaintiff. The substance of defendant’s argument is that there was no material conflict in the testimony of the two doctors who testified at the first trial, but that Judge Rogers, by granting a new trial and then suggesting and thereafter appointing another doctor, took the initiative in permitting conflicting medical evidence and lay testimony to be injected into the case. Defendant contends that the judge thus “created additional evi *648 dence” not sought by plaintiff, and that he exceeded his judicial discretion by “interjecting a completely foreign and new issue in the case.”
We think Judge Rogers, upon being appointed to succeed the late Judge Moss, had authority to perform any judicial function in the case which could have been performed by the latter. Judge Moss could have granted a new trial, and he could have appointed another medical expert to examine plaintiff. LSA-R.S. 23:1123. If the testimony of the appointed physician should have conflicted with that of other doctors, then he unquestionably could have considered the conflicting evidence, and we think he also could consider the lay evidence. In our opinion the judge who succeeded Judge Moss had authority to do these things also. We thus find that Judge Rogers did not abuse his discretion in granting a new trial and in appointing another doctor to examine plaintiff.
Defendant contends, next, that the trial judge erred in concluding that plaintiff was totally and permanently disabled. It concedes that D’Avy is entitled to recover for the permanent partial loss of use of his leg, under LSA-R.S. 23:1221(4), but it takes the position that plaintiff nevertheless is not disabled from performing all of his usual work as a bricklayer.
The record contains the testimony of the three doctors who examined or treated plaintiff, all of whom are orthopaedic surgeons. Dr. Campbell examined plaintiff initially, and he is the only doctor who has treated him for his injuries. He performed surgery on D’Avy’s knee, and he administered post operative treatment until he felt that plaintiff was able to return to work. As we have already observed, Dr. Campbell concluded that D’Avy had a 15 percent permanent partial loss of use or function of the left leg, but that he could return to work as a bricklayer by February 1, 1970, without suffering substantial pain.
In December, 1969, while being treated by Dr. Campbell, plaintiff complained for the first time of pain or soreness in the lateral aspect of his left leg below the knee. Dr. Campbell testified that he could find no explanation or cause for these complaints.
Dr. Schneider examined plaintiff only once, on April 13, 1970, and that was for the purpose of evaluating his injury. During that examination, plaintiff again complained of chronic pain in the lateral aspect of his left leg near the ankle. The doctor, however, was unable to find any medical justification for those complaints, except that he “could only assume a hypothet that this could be due possibly to a residual neuritis of the left perineal nerve which possibly could be due to contusion of the nerve at the time of his fall.” He concluded that D’Avy had a 20 percent loss of function of the knee, and he added a five percent disability for the complaints of lower leg pain, making a total residual disability of 25 percent of the left leg. Dr. Schneider, however, like Dr. Campbell, concluded that plaintiff could perform all of the duties of a bricklayer, without substantial pain, and he felt that plaintiff should return to work.
Dr. Morin examined plaintiff on December 2, 1970, and that also was solely to evaluate his injury. He concluded that plaintiff has a 30 percent partial permanent disability of the left knee joint, or a 15 percent partial permanent loss of function of the left leg. He felt, however, that D’Avy “could not return on a regular basis to all the jobs of a bricklayer without at times experiencing disabling pain.” Dr. Morin thus agreed with Dr. Campbell that plaintiff had a 15 percent partial permanent loss of function of the left leg, but he disagreed with Dr. Campbell and Dr. Schneider as to whether plaintiff could return to work without experiencing substantial pain.
D’Avy is 57 years of age. He is unmarried, and he lives alone. He testified that he performed light bricklaying work in November, 1969, and that he continued to do so until the job ended about one month later. He then returned substantially full time to bricklaying work in May, 1970, *649 shortly after the first trial was concluded, and he has worked for two companies since that time as a bricklayer. He stated that he works with substantial pain, and he describes his principal symptom as being a constant pain on the outside of his left leg. He testified, “the knee hurts a little bit, but most of mine is in the leg,” and “my knee gives me trouble, but most of it is in the leg.” He concedes that he is able to do all of the work of a bricklayer, but he complains that he works in pain and that he is unable to work as fast as other bricklayers.
The lay evidence, consisting principally of two of D’Avy’s co-workers, testified that plaintiff was slower in completing his work than he was before the accident, and that it was necessary for other workers to “carry” him at times. These witnesses stated, however, that they have seen D’Avy climb scaffolds and lay bricks while in a stooping or squatting position. One such witness, who was foreman of a crew upon which D’Avy worked after the accident, testified that plaintiff “earns his money or we couldn’t hire him either.”
Judge Rogers accepted the opinion of Dr. Morin as to plaintiff’s disability, and on the basis of that testimony he found that plaintiff was totally and permanently disabled.
As a general rule, the testimony of the physician who examined the injured employee immediately after the accident occurred is accepted in preference to that of a physician who examined him subsequently, or who did not have an opportunity to examine him at all. Frame v. Majors, 224 So.2d 65 (La.App. 3 Cir. 1969); Moulard v. Massman Construction Company, 209 So.2d 742 (La.App. 3 Cir. 1968).
Also applicable here is the rule that the testimony of the treating physician, who has had the benefit of repeated examinations and sustained observation of the injured employee, usually should be accorded greater weight than that of a physician who has examined him merely for evaluation purposes. Wild v. Continental Casualty Company, 234 So.2d 783 (La.App. 1 Cir. 1970); Moulard v. Massman Construction Company, supra.
In this case Dr. Campbell was the initial examining physician. He was the only doctor who treated plaintiff for his injuries, and the treatment he ádministered included the performing of surgery on plaintiff’s knee. We think the opinion expressed by Dr. Campbell as to plaintiff’s ability to perform the work of a bricklayer is entitled to greater weight than that expressed by the other two doctors who testified, each of whom examined plaintiff only one time and that was for the purpose of evaluation.
We have considered the lay testimony, but we do not consider it as showing disability on the part of plaintiff. The testimony of other bricklayers with whom he works indicates that plaintiff has worked almost continuously as a bricklayer since May, 1970, that he is employed through the union, that he receives the same wages as other bricklayers, and that he is assigned to work in the same manner as all other members of that union. Their testimony also indicates that he regularly climbs scaffolds, and works in a kneeling, squatting or stooping position, as do other bricklayers.
We feel that plaintiff has failed to establish that he is permanently and totally disabled within the meaning of the Workmen’s Compensation Act. Our conclusion is that the judgment rendered by Judge Moss is correct, and that plaintiff is entitled to an award based on a 15 percent permanent partial loss of the use or function of the left leg. The judgment appealed from thus must be amended.
Defendant contends that the trial court erred in allowing penalties and attorney’s fees. It argues that it had reasonable cause to discontinue the payment of benefits on January 28, 1970, and that it acted in good faith by resuming payments as soon as it discovered that they were due.
The report submitted to defendant by Dr. Campbell on January 28, 1970, clearly showed that plaintiff had a 15 percent per *650 manent loss of the use or function of his left leg, although he was able to return to his usual work. That was the only medical opinion which defendant had at the time, and it was on the basis of that report that it discontinued the payment of weekly benefits. We think the report showed clearly that plaintiff was entitled to benefits for the partial loss of the use of his leg, and that defendant did not have probable cause to discontinue all payments.
Defendant points out that plaintiff’s deposition was taken on March 26, 1970, and that it was not until that time that counsel for defendant learned that the payment of compensation benefits had been discontinued. It contends that defendant thereupon, on March 31, tendered to plaintiff the benefits due up to that date. The record shows that thereafter weekly benefits of $20.67 were paid to plaintiff from January 29, 1970, up to the date of the trial, on March 17, 1971. It is argued that these facts show that defendant was in good faith, and that its actions in discontinuing the payment of benefits was not arbitrary or capricious.
We have found that defendant did not have reasonable or probable cause to discontinue the payment of compensation benefits on January 28, 1970. Suit was filed on February 16, and defendant filed an answer denying liability on March 6, 1971. The tender of additional benefits was not made until March 31, and that was 61 days after the payment of regular, benefits had been discontinued. Under those circumstances we conclude, as did both of the trial judges, that defendant should be cast for penalties and attorney’s fees. See Plaisance v. Collins Industries, Inc., 193 So.2d 816 (La.App. 1 Cir. 1967).
There is no dispute between the parties as to the amount of penalties which were allowed. Defendant contends, however, that the attorney’s fees awarded by Judge Rogers are excessive, and that they should be reduced to $500.00, as found by Judge Moss.
Since we have concluded that plaintiff is entitled to compensation benefits amounting to substantially less than those allowed in the judgment appealed from, we feel that the attorney’s fees allowed by Judge Moss, in the amount of $500.00, are fair and adequate. The judgment appealed from thus will be amended to reduce the fees to that amount.
Finally, defendant contends that the trial judge erred in fixing the expert witness fees of the physicians who testified at $100.00 each. Judge Moss, in his written reasons for judgment, had allowed a fee of $50.00 to each physician, but in the decree which was signed later, an expert witness fee of $100.00 for each physician was stated.
 We think the fixing of the amount of expert’s fees rests largely within the discretion of the trial court, and his determination as to the amount of such fees will not be disturbed on appeal unless there appears to be a clear abuse of that discretion. Barnett v. Barnett Enterprises, Inc., 231 So.2d 589 (La.App. 4 Cir. 1970); Pittman and Matheny v. Davidge, 189 So.2d 706 (La.App. 1 Cir. 1966). In the instant suit we find no abuse of discretion on the part of the judge who tried the case last in awarding $100.00 as expert witness fees for each physician who testified. We thus will not disturb that award.
For the reasons herein set out, the judgment appealed from is amended and recast to read as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Whitney D’Avy, Jr., and against defendant, Bituminous Casualty Company, for workmen’s compensation at the rate of $20.37 per week for a period of 175 weeks, commencing on March 6, 1969, subject to a credit for all compensation paid by defendant, together with legal interest on each weekly installment from the date it becomes due until paid.
*651 “IT IS FURTHER ORDERED that there be judgment in favor of plaintiff and against defendant for the following additional sums: (a) for medical ex-
penses in the sum of $2,261.94, with legal interest thereon from date of judicial demand until paid, subject to a credit of $2,071.94; (b) for penalties of 12 percent of $1449.75; (c) for attorney’s fees of $500.00; and (d) for the sum of $93.75 representing the court reporter’s bill.
“IT IS FURTHER ORDERED that the expert witness fees of Dr. George P. Schneider, Dr. Edmund C. Campbell, and Dr. Norman P. Morin be fixed at $100.00 each, and taxed as costs.
“IT IS FURTHER ORDERED that defendant pay all court costs.”
Except as herein amended, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.