HOOD, Judge.
Carlton Sam instituted this suit to recover workmen’s compensation benefits from his employer, Frank Kendrick, d/b/a Kendrick Excavating Service, and the latter’s insurer, United States Fidelity & Guaranty Company. The trial court rendered judgment for defendants, and plaintiff appealed.
The issues presented are (1) whether plaintiff has been disabled since the payment of compensation benefits was discontinued, and (2) whether plaintiff is entitled to benefits for the permanent partial loss of the use of a member, under LSA-R.S. 23:1221.
Plaintiff sustained a disabling injury on September 22, 1970, during the course of his employment as a construction worker for defendant Kendrick. The defendant was engaged in laying a pipeline at a jobsite in Mississippi at that time, and a trailer loaded with pipe ran over plaintiff’s right leg and ankle. As a result of that accident, plaintiff sustained injuries consisting principally of a trimalleolar fracture of the right ankle. He received medical treatment immediately in Mississippi, the treatment consisting in part of the application of a long leg cast, and he then returned to his home in St. Landry Parish, Louisiana.
Dr. Frederick L. Mayer, an orthopedic surgeon of Opelousas, treated plaintiff *637 from September 28, 1970, until January-19, 1972. The treatment administered by Dr. Mayer included three surgical procedures, the application of leg casts and physical therapy. An open reduction and internal fixation of the ankle, with the use of stainless steel screws, was performed on September 29, 1970. The screws were removed on February 25, 1971, hospitalization and surgery being required for that procedure. Sam was hospitalized a third time on October 6, 1971, for the surgical exploration of his ankle, at which time a tenolysis of the perineal longus and brevis tendons was carried out.
Despite the prolonged period of treatment, plaintiff’s ankle healed in satisfactory position and with no abnormalities. Dr. Mayer discharged plaintiff on January 19, 1972, as being able to return to his former employment, being aware of the fact that that employment required heavy manual labor. He testified that plaintiff at that time had approximately a five percent loss of passive dorsal flexion of the right ankle, and that that condition was permanent. For that reason, he estimated that Sam had a ten percent permanent impairment of the right foot, or an eight percent permanent impairment of the right lower extremity. He felt, however, that despite that impairment, plaintiff was able to perform all of the duties of his former employment. His testimony, in part, is as follows:
“My opinion was at the time I last saw him on January 19, 1972, I felt that the ankle had healed to a degree where the ankle could stand up to heavy manual labor. . . .
“I can only answer you based upon my last examination of January 19, 1972, at which time I felt that the ankle was sufficiently healed that the man could return to work . . .
“. . . it was my opinion that the ankle was able to withstand the so-called trauma of heavy manual labor as of January ....
“I feel that the ankle will withhold the stress of standing 8 to. 10 to 12 hours of walking or bending or squatting. The fracture was healed and there was no abnormalities as of January 19 to suggest otherwise . . . .”
Plaintiff was examined by Dr. Francis C McMains, an orthopedic surgeon of Baton Rouge, on March 29, 1972. Dr. Mc-Mains found that the fracture of plaintiff’s ankle had healed “in good position and alignment,” but he also found some swelling in both of Sam’s legs, more so in the injured one, and a limitation of motion or flexion of the right ankle. From his objective findings and plaintiff’s complaints, he concluded that Sam was experiencing pain in the subtalar joint just below the ankle. Dr. McMains’ examination also revealed that plaintiff had some cardiac problems, not related to the accident, which he felt contributed to the swelling in his legs. His ultimate conclusion was that because of the persistence of loss of motion and residual swelling, plaintiff had 25 to 30 percent permanent disability of his right lower extremity, and that he was not capable of returning to his employment.
Two lay witnesses, plaintiff’s daughter and a neighbor, testified that plaintiff had been in good health and had worked regularly prior to the accident, but that he has limped and used a walking cane and had not worked since the accident occurred.
Plaintiff is fifty years of age. He has had very little formal education and for many years has performed construction work requiring heavy manual labor. He has performed no work of any kind since the accident occurred. He testified that he cannot “put weight on” his ankle, that it “won’t stand any pressure,” and that it pains him and swells when he attempts to work.
The evidence shows that Sam has limped and has used a cane in walking since the accident occurred. He also walks with his right foot turned outwards, or to the *638 side. Dr. Mayer feels that the limp was not due to any deformity, pain or loss of motion of the ankle, but that it was due for the most part to the habit of having-walked that way since the accident. He based that conclusion on the fact that he could find no significant physical orthopedic abnormalities that would explain the limp. Dr. McMains feels that plaintiff’s limp is due to the limitation of motion in the ankle and to pain in the subtalar joint.
Workmen’s compensation benefits were paid to plaintiff from the date of the accident until February 21, 1972. The payments were discontinued on the last mentioned date in view of the report of plaintiff’s treating physician that he was able to return to work.
Judgment was rendered by the trial court rejecting plaintiff’s demands. The trial judge did not assign reasons for judgment, but it is apparent that he accepted the testimony of Dr. Mayer, the treating physician, and concluded that plaintiff has not been disabled since defendants discontinued the payment of compensation benefits.
The opinion of the treating physician who has been in close contact with the patient over a long period of time is entitled to greater weight than that of an equally well qualified physician who has not had the benefit of close and frequent contact and examination. Nixon v. Pittsburgh Plate Glass Co., 161 So.2d 361 (La.App. 3 Cir. 1964); D’Avy v. Bituminous Casualty Company, 255 So.2d 645 (La.App. 3 Cir. 1971).
In the instant suit both of the physicians who testified were orthopedic surgeons. Dr. Mayer treated plaintiff over a long period of time, and had an opportunity to examine and to observe him many times. Dr. McMains, on the other hand, examined plaintiff only one time, about 18 months after the accident occurred, and his examination was made for the purpose of trial instead of for treatment. Under these circumstances we cannot say that the trial judge erred in accepting the testimony of the treating physician.
Our conclusion is that the evidence fails to establish that plaintiff has been disabled since February 21, 1972, the date on which the payment of compensation benefits was discontinued. We find no error in the judgment rendered by the trial court rejecting plaintiff’s demands.
We also find no merit to plaintiff’s alternate claim that he is entitled to benefits based on the permanent partial loss of the use or function of his right leg, under LSA-R.S. 23:1221. In the first place, we are not convinced that plaintiff has a 25 or 30 percent loss of the use of his leg, as he contends. Instead we are inclined to accept the opinion expressed by Dr. Mayer that he has a ten percent permanent partial loss of use of his foot or an eight percent loss of use of his leg.
Second, it appears to us that the aggregate amount of compensation benefits which have been paid to plaintiff amount to more than the sum which would be due him under LSA-R.S. 23:1221, whether the benefits are computed on the basis of the loss of use of the foot or of the leg. Plaintiff has received payments of $49.00 per week for 74 weeks, making a total of $3,626.00. The record does not show what his wages were at the time of the accident, but in the absence of such a showing we conclude that with an eight or ten percent permanent partial loss of use of either a foot or a leg, the weekly payments due him would be the minimum provided in LSA-R.S. 23:1202. According to our figures, the payments already made to plaintiff exceed any amount which otherwise might be due him under LSA-R.S. 23:1221 for the permanent partial loss of use of a member.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.