336 So.2d 960 (1976)
Earl MATIRNE and
Glenn Washington
v.
Helen WILSON and Volkswagen Insurance Company.
No. 7386.
Court of Appeal of Louisiana, Fourth Circuit.
July 29, 1976.
Rehearing Denied September 14, 1976.
Writ Refused December 1, 1976.
*961 J. Terrell Heath, New Orleans, for plaintiffs-appellants.
Bienvenu, Foster, Ryan & O'Bannon, Leonard A. Young, New Orleans, for Volkswagen Ins. Co., defendant-appellee.
Before SAMUEL, LEMMON and STOULIG, JJ.
SAMUEL, Judge.
Plaintiffs have taken this appeal from a judgment dismissing their suit for personal injuries, medical expenses, lost wages and rental cost of a temporary substitute vehicle, all allegedly resulting from a collision involving a Volkswagen owned and driven by plaintiff, Matirne, in which the other plaintiff, Washington, was a passenger, and a Buick driven by the individual defendant, Wilson. The other defendant, the insurer of the Volkswagen, is sued under the uninsured motorist provision of its policy. Damages to the Volkswagen were paid by the defendant driver prior to suit.
The accident occurred between 4:30 and 5 p.m. on October 18, 1973 on General De-Gaulle Drive near its intersection with Farragut Street in the City of New Orleans. At the site of the accident, approximately one block from the Greater New Orleans Mississippi River Bridge, DeGaulle consists of three traffic lanes, one a special turning lane for vehicles exiting from DeGaulle into Farragut and the other two for traffic proceeding on DeGaulle toward the bridge. Immediately prior to the accident, the defendant automobile was stopped in the turning lane and the plaintiff car was proceeding on DeGaulle in the lane immediately adjacent to the turning lane.
The only evidence contained in the record regarding the manner in which the accident occurred is the testimony of the three individual litigants and the investigating police officer. The record also contains a photograph of the damaged left rear fender of the Volkswagen.
According to plaintiffs' version, their automobile was almost parallel with the Buick when the defendant driver proceeded to pull out of her stopped lane of traffic into their lane, striking the plaintiff automobile in the rear. Defendant's version of the accident is that she was stopped in a line of traffic in the turning lane. She saw the center lane was open in front of her and, solely by looking in her rear view mirror, saw there were no vehicles in the center lane to her rear, other than a bus which was a sufficient distance away so that she could safely move into that lane. She did not see the plaintiff car until they sideswiped each other and she believed it also was changing lanes because she had not seen it when she looked in the mirror. The investigating police officer found the Volkswagen in the extreme right lane and the Buick on the center dividing line between the right and left lanes. From the debris he concluded the apparent point of impact was at the location where the Volkswagen was resting.
*962 While the trial court did not pass upon the question of negligence, the record leaves no doubt that the proximate cause of the accident was the negligence of the defendant driver in failing to see the approaching Volkswagen and in pulling out of a stopped lane of traffic into its path. With the exception of the claim for the rental cost of a temporary substitute vehicle, the trial court judgement is based upon a finding that plaintiffs' injuries were either "faked" or not caused by the accident in suit. The trial judge also was of the opinion that the claim for the rental cost of a temporary substitute vehicle had not been proven by the required preponderance of evidence.
Relative to personal injuries, the defendant driver testified: The impact was very slight and caused very minor damage. As soon as the plaintiff driver got out of his car he asked if she had insurance. Upon learning she did,[1] he put his hand behind his neck and said: "I feel a whiplash coming on." She invited him to go to the hospital immediately, but he refused because he was expected in another part of town. Both plaintiffs assured both her and the investigating police officer that they were not hurt. The police officer stated that when he arrived at the scene he inquired as to injuries and all of the litigants told him they were not injured.
The plaintiff driver, Matirne, testified: His shoulder, back and legs hurt immediately on impact and he was dizzy when he got out of his car after the accident. He felt an ache in his back shortly after he left the scene as he was crossing the bridge. At the same time his guest passenger began to complain about his neck so they both went to a doctor about two hours after the impact. The doctor prescribed medication for both men and treated him three times a week over an extended period. He stated he had missed two days of work as a limousine driver for which he was being paid $2.40 per hour and tips. He also said it took a month and a half to repair his car and he had to rent a replacement vehicle at a cost of $120. A bill from Avis Car Rental in the sum of $260.21 was introduced in evidence. He also sells newspapers for a small profit and was unable to resume his regular route for three weeks.
Washington, the plaintiff passenger, testified: He did not begin to feel injured until an hour or two after the accident. At that time the neck, and the upper part of his back "got tight" and became stiff. Any movement caused pain. The doctor prescribed medication following examination. He was unable to return to work as a welder because it hurt to wear his helmet, a necessary requirement on his job. His employment was terminated when his employer learned he would be unable to perform his duties because of the accident. A month and one-half later he got a job as a school bus driver. He had to remain at home because walking was too strenuous and his neck caused headaches. His condition improved within two or three weeks after the accident and, although not completely cured, he was able to move around and could endure the pain. He received heat treatments three days a week for the first six weeks and lesser treatment as the muscles began to get better. He was under medical care for approximately three months.
The physician seen by the plaintiffs testified: He saw both plaintiffs on the date of the accident and treated Matirne for pain in the lower back and the left hip. At the initial examination of Matirne, the lower back muscles were tender and painful and movement caused discomfort and pain. Straight leg raising and flexion tests caused pain and discomfort in the lower back and hip, and there was some discomfort in the left shoulder girdle. The neurological examination was essentially negative. Matirne was seen thereafter on five other occasions in October, nine occasions in November, and six occasions in December. Treatment consisted of muscle relaxants and physiotherapy. At the initial examination of Washington, the trapezius muscles *963 were sore and the lower back revealed tenderness to palpation and pain and discomfort on movement. This patient was treated for a cervical strain. Indocin, a muscle relaxant, was prescribed and physiotherapy ordered. He was seen on twenty occasions between the date of the accident and December 28, 1973.
The trial judge based his conclusion that plaintiffs' injuries were either non-existent or not caused by the accident in suit on the fact that he did not believe their testimony regarding injuries. In addition to his observation of the plaintiffs as they appeared before him, his written Reasons for Judgment state there were too many discrepancies within the evidence to justify a belief in their credibility. Among those discrepancies he noted: (1) the fact that both plaintiffs told the investigating police officer they were not injured, yet Matirne testified that, immediately on impact, he felt pain in his legs and was dizzy, both plaintiffs testified they felt pain shortly after leaving the scene of the accident, and both saw the physician less than two hours after the collision; (2) after being told by the individual defendant that she had insurance, Matirne stated he felt a whiplash coming on; (3) while mindful of the fact that a slight blow may cause serious injuries, the impact and damage in this accident were extremely slight and not of the type likely to produce the "whiplash" injuries complained of, a sideswipe which only "dulled" but did not scratch the side of the Buick and damaged the Volkswagen only to the possible extent of slightly enlarging a dent already present in the left rear fender; and (4) as brought out on cross examination, Matirne had been in several other recent automobile accidents, all of which he admitted on cross examination only after being given the dates of those accidents, in all of which he made claims for injuries similar to those claimed here, and in all of which he was treated by the same doctor as here.
While we are satisfied the sole proximate cause of the accident was the action of the defendant driver in pulling out of a stopped lane of traffic at a time when it was unsafe to do so, we agree with that line of jurisprudence which establishes that the trial judge's factual determination regarding injuries, particularly in those cases where the claim would depend in some degree upon plaintiff's sincerity and truthfulness, are not to be overturned in the absence of a clear showing that the determination is erroneous.[2] After weighing and evaluating all of the medical and lay testimony the trial judge may accept or reject the opinion expressed by any medical expert, depending on how impressed he is with the qualifications, credibility and testimony of that expert.[3] As it is the duty of the trial judge to seek the truth, he should evaluate the testimony of a medical witness according to the same rules applicable to other witnesses.[4] Regarding appellate action on factual findings by the trial court where those findings are based upon reasonable evaluation of credibility, in Canter v. Koehring Company,[5] the Supreme Court of Louisiana said:
"When there is evidence before the trial of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error."
In the instant case, we are satisfied that all of the complaints of both plaintiffs regarding their injuries were subjective, and this is true even after due consideration of the testimony of their physician. Under these circumstances, a determination of *964 whether the injuries complained of actually existed or, if they did exist, whether they were incurred as a result of the accident in suit is dependent upon the credibility of the plaintiffs themselves, and we find no manifest error in the trial judge's evaluation of that credibility. Accordingly, we affirm his conclusion relative to the injuries.
In the absence of liability for injuries sustained in the accident, defendants cannot be held liable for the claimed medical expenses and lost wages allegedly resulting from such injuries. Insofar as the claim by Matirne for the rental cost of a temporary substitute vehicle is concerned, we agree with the trial court finding that this claim has not been proved with sufficient certainty.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] She only had collision coverage of her own automobile.
[2] See Sonnier v. United States Casualty Company, 246 La. 401, 165 So.2d 3; Ware v. Aetna Casualty & Surety Company, La.App., 108 So.2d 824.
[3] See Touchet v. Fidelity and Casualty Co. of New York, La.App., 264 So.2d 752.
[4] See Frame v. Majors, La.App., 224 So.2d 65; Williams v. Southern Advance Bag & Paper Company, La.App., 87 So.2d 165.
[5] 283 So.2d 716, 724 (S.Ct. 1973).