391 So.2d 1347 (1980)
NECAISE, INC.
v.
Harold VICKNAIR.
Sam JUNDA, d/b/a Junda Enterprises
v.
Harold VICKNAIR.
Nos. 10836, 10837.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1980.
W. Monroe Stephenson, New Orleans, for Necaise, Inc., plaintiff-appellee.
Caryl H. Vesy, New Orleans, for Sam Junda, d/b/a Junda Enterprises, plaintiff-appellee.
Leon C. Vial, III, Hahnville, for defendant-appellant.
*1348 Before SAMUEL, REDMANN and GARRISON, JJ.
SAMUEL, Judge.
These two matters were consolidated for trial in the district court and for argument here. Harold Vicknair is the defendant in both suits. Necaise, Inc. is the plaintiff in suit No. 10,836 of our docket, and Sam Junda, d/b/a S. J. Junda Enterprises, is plaintiff in suit No. 10,837 of our docket. Both suits seek the alleged balances due on building and/or repair work performed by plaintiffs on Vicknair's immovable property.
Vicknair's defense in the Necaise suit is that the contract was performed in an unworkmanlike manner. His defense in the Junda suit is that Junda was a subcontractor of Necaise and should look to Necaise for payment. Vicknair also filed a third party demand against Necaise in the Junda suit and a reconventional demand in the Necaise suit.
Following trial, separate judgments were rendered, both against Vicknair. Necaise was awarded $986.30 and Junda was awarded $2,192. Vicknair has appealed from both judgments.

The Junda-Vicknair Contract
On June 7, 1977 Vicknair accepted a written proposal by Junda to install aluminum gutters, aluminum soffets and fascia, remove an existing wooden window and replace it with an aluminum window, cap all window casings, and install a large picture window, all at a cost of $2,192. Junda completed its work for Vicknair under this contract but was not paid. Its suit against defendant is for $2,192, the full amount of the contract.

The Necaise-Vicknair Contracts
On June 7, 1977 Necaise proposed to take off Vicknair's old roof, tear down and haul away a drop roof, repair a sag in the roof, install a new roof on one side, install rafters, and sheeting for a new roof, frame sidewalls, and block in existing walls for the sum of $4,843.
Apparently Vicknair was satisfied with this work because he paid Necaise in full, and on July 8, 1977 again contracted with Necaise for an addition and interior work to the existing structure of his home at a cost of $24,863. The contract provided for payments of 50% upon signing, 40% upon completion of the new addition and 10% on completion of the inside of the existing structure. During the course of this work Vicknair requested extra work of Necaise as follows: Installation of two storm doors, caping a beam on the carport, and covering the following: 1) the carport ceiling, 2) an offset overhang, and 3) a rear gable with aluminum siding.
Necaise asked Junda to bid on this extra work and accepted Junda's bid of $1,050. Later Vicknair requested an additional window at a cost of $150. The window was made by Junda and installed by Necaise but later removed because Mrs. Vicknair was dissatisfied. Necaise paid Junda $1,200 for all of these extras (including the additional window).
When the July 8 contract with Necaise was completed Vicknair had made all of the payments called for thereunder with the exception of the final payment of $2,486.30.

The Junda Judgment (No. 10,837)
In this court appellant contends that the trial court erred in: (1) failing to find plaintiff a subcontractor of Necaise; (2) dismissing the third party demand; and, alternatively, (3) that the judgment should be reduced to $2,042, the balance appellant claims is due if we find the first two contentions are without merit.
Relative to appellant's first contention, the trial court examined the two June 7 contracts and found the contract in the instant case was one between plaintiff Junda and defendant Vicknair and not one between Necaise and plaintiff Junda. In his Reasons for Judgment the trial judge said: "Dissimilarity of the items in the Necaise, Inc. contract with the items in plaintiff's contract make it apparent that Necaise, Inc. did not contract to perform the *1349 work contemplated in plaintiff's contract and would not have reason to subcontract to plaintiff work that Necaise was not called upon to perform."
From our examination of these contracts and the testimony of Vicknair, Ron Smith and Robert Necaise (president of Necaise, Inc.), we conclude, as did the trial court, that the June 7 contract between Junda and Vicknair formed no part of the agreements between Vicknair and Necaise. We agree that Junda was not a Necaise subcontractor.
In connection with appellant's second contention, we conclude the trial court was correct in dismissing Vicknair's third party demand because Junda was not a Necaise subcontractor and because the setoff for unworkmanlike performance was resolved in the suit filed by Necaise, with which resolution we also agree.
Appellant's third (and alternative) contention, that the Junda judgment should be reduced from the sum of $2,192 to $2,040, is based upon the fact that the extras Junda made for Necaise (in connection with the Necaise-Vicknair contract of July, 1977) cost only $1,050, but Necaise paid Junda $1,200. Defendant Vicknair wants the advantage of the Necaise overpayment of $150. That overpayment was for the $150 window Mrs. Vicknair subsequently returned.
The trial court apparently concluded that the overpayment by Necaise to Junda was a matter between those two corporations and that Vicknair, having admitted he paid Junda nothing under the June 7 contract (his only agreement with Junda), owed Junda the full amount of that contract, of $2,192. We find no error in that conclusion.
For the reasons assigned, the judgment appealed from in the Junda matter (suit No. 10,837 of our docket) is affirmed.

The Necaise Judgment (No. 10,836)
Defendant withheld the final payment of 10% of the July 8, 1977 contract price, or $2,486.30 (the amount sued for) for unworkmanlike performance. Vicknair claims the cost of labor and materials to correct the alleged defects amounted to $5,920.31, and he reconvened for a setoff in that amount.
Defendant testified on his own behalf and expert testimony was given by Curry Roberts, a carpenter, James Carter, an architect, and Michael Sackett, a repair and remodeling contractor. Plaintiff produced Robert Landry, a carpenter, who worked on the job for Necaise. Vicknair testified at length about omissions and deficiencies and Landry testified the contract was performed in a workmanlike manner despite hassless and innumerable changes demanded by defendant and his wife.
Relying primarily on the expert testimony, the trial court found there were deficiencies. However, the defendant's witnesses differed in the number of defects present and the cost of their repair. Curry Roberts estimated the cost of repair at $5,920.31. Michael Sackett estimated the cost of repair at $1,500 and agreed to make the listed repairs for that amount, and James Carter, the architect, testified to repairs costing $769.
The repairs consisted principally of brick work, ceiling tiles, adjustment of doors, and items of a minor nature. Although defendant complains a self-cleaning oven was not provided, the evidence establishes defendant and his wife ordered the kitchen cabinets and stove themselves, and that a picture window was delivered but not installed because the wife was dissatisfied.
The trial court considered Roberts' estimate of defects and the cost of repair to be excessive and accepted Sackett's estimate as correct. Thus, it reduced defendant's demand of $2,486.30 by $1,500 and granted plaintiff a judgment of $986.30.
Appellant contends the testimony of Roberts should have been given greater weight. Our settled jurisprudence is that expert testimony is to be weighed by the trier of fact in the same manner as other *1350 evidence.[1] The weight of opinion testimony is determined by the professional qualification and experience of the expert and the findings upon which his opinion is based.[2] Where the testimony of experts differs, a conclusion thereon is largely a matter of credibility, and a finding in this regard by the trial judge will not be overturned absent manifest error.[3] We find no manifest error here.
For the reasons assigned, the judgment appealed from in the Necaise matter (suit No. 10,836 of our docket) is affirmed.
AFFIRMED.
REDMANN, J., dissents with written reasons.
REDMANN, Judge, dissenting.
The judgment appealed from gives contractor Junda $150 more than the $2,042 that he sued for[1] and that he testified was all he was owed.[2]
Indeed, Junda increases the credibility of his disinterested testimony by his apparent honesty in repudiating contractor Necaise's self-serving explanation that the extra $150 Necaise paid Junda was for extra work Junda did. That explanation was self-serving because it seeks to defeat the strong implication that Necaise paid Junda because Necaise had indeed agreed, as Vicknair testified and the written contract supports, that the earlier Junda-Vicknair contract would be assumed into the Necaise-Vicknair contract and Necaise would therefore pay Junda.
The written contract supports Vicknair because the handwritten amendments (written by Necaise) include "windows" and "front window"[3] (and those items are included in the first, Junda-Vicknair contract to "Remove 8 ea. existing wood windows, replace with Alum. windows, ... Install 144 inch Picture Window on front of house..."). Necaise testified that Vicknair would not agree to (or pay the proposed "50% upon signing" of) the contract unless Necaise agreed to this "extra work" and therefore Necaise agreed to include it in the $24,063 price, Vicknair paid the 50%, and Necaise added "Paid 12,431.50 B.N." to the amendments he had personally handwritten on the typed proposal.
Necaise's testimony that the handwritten amendments and first payment came 35 or 40 days after the July 8 proposal is false. Vicknair's check for $12,431.50 was paid by the bank on Monday, July 11, the first bank day following the Friday, July 8 proposal.[4]
In respect to the trial judge's acceptance of the $1,500 repair estimate, we are unable to disagree (the record is very poor).
*1351 Our decree should affirm the calculation of $986.30 for Necaise but, because the cases are consolidated, decree compensation of that $986.30 with the $2,042 the record establishes that Necaise owes Vicknair because Necaise agreed the first Junda contract would be incorporated in Necaise's $24,863 contract and Vicknair is entitled to judgment over against Necaise for the $2,042 to which our decree should reduce Junda's $2,192 judgment against Vicknair.
Thus the final net judgments should be $2,042 for Junda against Vicknair and judgment over for that amount for Vicknair against Necaise; and judgment for Necaise against Vicknair for $986.30; with judicial compensation settling the net Necaise-Vicknair disputes by net judgment for Vicknair against Necaise for $1,055.70. Necaise should pay all costs of both suits.
NOTES
[1] McCarstle v. McCarstle, La.App., 356 So.2d 491.
[2] Burns v. Lamar-Lane Chevrolet, Inc., La. App., 354 So.2d 620.
[3] See Monette v. Aetna Cas. & Sur. Co., La. App., 352 So.2d 423; St. Pierre v. Gabel, La. App., 351 So.2d 821.
[1] The petition reads: "I. That Harold Vicknair... is indebted to petitioner in the sum of $2,042.... IV. That the total amount of the written contract and `extra work' was $3,242 of which defendant paid ... $1,200, leaving a balance owing thereon of $2,042. V. That ... [defendant] has never paid petitioner the remaining $2,042.... WHEREFORE, petitioner prays ... judgment ... in the sum of two thousand, forty-two and no/100 ($2,042) dollars...."
[2] "Q. How much is due now? A. Well, he paid me $1,200, so that would be $2,042. * * * Q. What extra work did you do on the picture window for which your company was paid $150 over yourA. (Witness interjects [reporter's note]) None, none. Q. What was the $150 for? A. I thought that it was part payment or [on?] the original contract.... Because [Vicknair] had asked if it would be allright if he paid Bob [Necaise] and I would get it from Bob."
[3] "1. Stove (oven) 2. Windows 3. front Door 4. front Window Brick (Back door) 5. shower glass door (Heater) 6. Kitchen (Wall) 7. Sink, tiles (Kitchen)."
[4] One other piece of inexplicably inexact evidence is Necaise's alleged photocopy of the original unamended proposal. It is not a photocopy. There are ten differences in the typing, ranging from location of typing in the form to different punctuation and capitalization and even use of the word "agreement" for "contract."