417 So.2d 391 (1982)
Arleen Newitt, wife of/and Bruce NEWITT
v.
HOSPITAL CORPORATION OF LOUISIANA, d/b/a Lakeside Hospital For Women.
No. 5-38.
Court of Appeal of Louisiana, Fifth Circuit.
June 8, 1982.
Rehearing Denied August 17, 1982.
Manard, Schoenberger & Ryan, Robert L. Manard, III, New Orleans, for plaintiffs-appellants.
*392 René A. Curry, Jr., New Orleans, for defendant-appellee.
Before CHEHARDY, KLIEBERT and CURRAULT, JJ.
CHEHARDY, Judge.
This is a suit for damages instituted by Arleen Newitt, wife of/and Bruce Newitt against Hospital Corporation of Louisiana, doing business as Lakeside Hospital for Women, resulting from injuries sustained by plaintiff wife at defendant institution. Following trial judgment was rendered in favor of plaintiffs in the sum of $1,500. Plaintiff's have appealed.
These facts are not in dispute. On April 18, 1979, Mrs. Newitt (hereinafter referred to as plaintiff) was admitted to Lakeside Hospital by Dr. Paul Fuselier, her personal physician. She was allergic to Demerol and this was duly noted on her medical chart. In spite of this fact plaintiff was administered 50 milligrams of Demerol on April 22, which triggered a phobic reaction lasting somewhat less than 12 hours. At a later hospitalization in August 1980, she complained of an improperly administered Vistaril shot. She also complained of employee laxity in answering her requests for aid promptly.
Plaintiff later consulted Dr. C. B. Scrignar, a psychiatrist for a phobia of hospitals, allegedly resulting from the negligently administered Demerol injection.
The award of $1,500 for pain, suffering, mental anguish and medical costs was based solely on the Demerol incident. The trial judge failed to find actionable negligence on the part of the hospital in regard to the Vistaril shot and rejected plaintiff's claim for a phobia or unusual irrational fear of hospitalization.
In this court appellants contend the trial court erred in failing to grant recovery for the alleged phobia of hospitals and for past and future medical bills in connection therewith.[1] In support of their position, plaintiffs rely on the testimony of plaintiff wife, four lay witnesses, and the two medical experts, her treating physician Dr. Fuselier (who did not testify, but whose deposition is in evidence), and Dr. Scrignar, the psychiatrist.
The only issue for our consideration therefore is the alleged phobia of hospitals. In connection therewith we have carefully examined the testimony of Mrs. Newitt, her lay witnesses and the two medical experts.
Plaintiff testified she had been hospitalized on seven occasions prior to the incident in suit and had consulted numerous doctors for a variety of ailments. Although she expressed a lack of confidence in some doctors, plaintiff had great trust in Dr. Fuselier, her gynecologist. She is knowledgeable about hospital procedures having worked in the x-ray department of another hospital where she observed patients who had died following injection of drugs to which they were allergic. She herself had almost died on the operating table during a prior hospitalization.
In spite of these experiences plaintiff claims she did not have a fear of hospitals until after the Demerol episode. Even though she was still running a temperature and all of the tests had not been administered, plaintiff asked to be released the next day.
Although Dr. Fuselier suggested further hospitalization the following month, because of her fear, plaintiff delayed hospitalization until July 1979 and returned to Lakeside only because this is where Fuselier practices. She also went back to the hospital briefly in August 1980 and is aware that her physical problems are such that she will require future hospitalization. If Fuselier recommends surgery she will return.
Plaintiff's visits with Dr. Scrignar were unsatisfactory. She found him no help at all. After four visits she discontinued his services. Part of the reason was that he had moved his offices and she claimed an *393 inability to find sitters. However, two of her lay witnesses (her father, who is retired, and a close neighbor) both offered to sit at any time. Dr. Scrignar had suggested hypnosis but since her fears were related to human error, and not imagined, she was not receptive to the suggestion.
Dr. Fuselier indicated he first saw plaintiff in January 1978. She had a long-standing medical problem and had consulted and been treated by a number of physicians with poor results. When plaintiff was admitted to Lakeside in April 1979 he noted on her chart she was allergic to Demerol, and when she was erroneously given the injection she experienced all of the usual reactions which patients demonstrate when they are allergic to the medication, rashes, heaves, welts, difficulty breathing, nausea, vomiting, tremors and agitation. Her unfortunate experience played a part in her early discharge the following day and her subsequent fear of hospitals.
The following month she was advised further hospitalization would be necessary if her condition did not respond to conservative treatment. She was rehospitalized at Lakeside in July 1979, was discharged a week later and was admitted again in August 1980. Because of past experiences plaintiff was reluctant to be hospitalized. Fuselier indicated plaintiff's greater reluctance than usual may be due to the unusual amount of surgery she has undergone previously.
Dr. Scrignar, a clinical proffessor of psychiatry specializing in phobic reaction, testified: He first saw Mrs. Newitt on June 10, 1980, and on three subsequent occasions, June 16, 23 and July 30, 1980; he obtained her medical history involving a partial hysterectomy in 1977 with a rocky post-operative course including administration of the Last Rites. This set the stage for her anxiety about doctors, hospitals, and surgical procedures. However, no phobic components were present at that time because in January 1978 she was again hospitalized and had no phobic components after that operation. In January 1979 she consulted a doctor for abdominal swelling and pain which involved conservative treatment and no signs or symptoms of phobia were present at that point.
In April 1979 in addition to an allergic reaction to a Demerol shot she had a panic attack, a dysphoric or uncomfortable feeling and thought she was going to faint, go out of control, or that she was going to die. He concluded the Demerol episode was responsible for her anxiety reaction and triggered or activated the phobia she now suffers. He diagnosed her condition as a post-traumatic stress disorder.
The doctor concluded Mrs. Newitt had a very severe phobic reaction to hospitals, injections, medical orders and doctors. This phobia impinges on her access to treatment because she has a known physical problem, abdominal adhesions, as a consequence of past hospitalizations which may require hospitalization in the future. He concluded if she needed and refused an emergency operation it would require strong arm measures, a lot of medication and sedation or possible interdiction if she refuses to go. In his opinion Mrs. Newitt would require a minimum of one year of psychiatric treatment on a once-a-week basis to cure her phobia.
The testimony of the lay witness on the subject of plaintiff's alleged phobia is brief and unconvincing.
The trial judge concluded Dr. Fuselier's answers were general and did not indicate any unusual situation as regards plaintiff and hospitalization, and while Dr. Scrignar's testimony was excellent and intelligent about phobias generally, his testimony as to plaintiff's phobia was markedly inconsistent with the facts as indicated by plaintiff. His testimony that if plaintiff needed an emergency operation because of a life or death situation and refused such operation, he would have to have her interdicted to have her return to the hospital, is a hypothesis. Actually on two occasions after the Demerol incident, which did not involve life-threatening situations, plaintiff did return to Lakeside.
Plaintiff's testimony did not impress the trial court, nor does it impress us, that plaintiff was phobic or irrational on the prospect of any future hospitalizations.
*394 Appellant contends we should accept the uncontradicted medical evidence as true. We do not agree.
After weighing and evaluating all of the medical and lay testimony the trial judge may accept or reject the opinion expressed by any medical expert. Guidry v. Davis, 382 So.2d 250 (La.App. 3d Cir. 1980); Monette v. Aetna Cas. & Sur. Co., 352 So.2d 423 (La.App. 3d Cir. 1977); Matirne v. Wilson, 336 So.2d 960 (La.App. 4th Cir. 1976). As it is the duty of the trial judge to seek the truth he should evaluate the expert testimony according to the same rules applicable to other witnesses. Necaise, Inc. v. Vicknair, 391 So.2d 1347 (La.App. 4th Cir. 1980); Davenport v. McCullough Services Baroid Div., 388 So.2d 453 (La.App. 2d Cir. 1980); Jennings v. Halliburton Co., 346 So.2d 268 (La.App. 4th Cir. 1977). The trial judge is not bound by expert testimony. He may substitute his own common sense and judgment for that of an expert witness where, in the opinion of the trier of fact, such substitution appears warranted by the evidence as a whole. Smith v. Andrepont, 378 So.2d 479 (La.App. 1st Cir. 1979); Galloway v. Gaspard, 340 So.2d 579 (La.App. 1st Cir. 1976).
In the instant case we are satisfied, as was the trial court, that plaintiff has failed to prove a phobia of hospitals attributable to the negligently administered Demerol shot, and this is true even after careful consideration of the expert testimony. If such a condition had been proven, it is unlikely that psychiatric treatment would have been accepted by plaintiff. It is clear from her testimony she placed no confidence in psychiatric treatment and would be unlikely to attend the weekly, one-year minimum treatment at $75 per hour recommended by her psychiatrist.
The trial court was correct in rejecting plaintiff's claims for an additional award for her alleged phobia and medical expenses in connection therewith.
For the reasons assigned the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] Appellants do not contest the $1,500 award for the Demerol shot and their brief states that the "award for the physical reaction caused by the allergic reaction to the Demerol shot was fair".